TOWNSEND ET AL. *v.* SWANK, DIRECTOR,
DEPARTMENT OF PUBLIC AID
OF ILLINOIS, ET AL.

No. 70–5021. Argued November 8, 1971—
Decided December 20, 1971*

*Michael F. Lefkow* argued the cause and filed briefs
for appellants in No. 70–5021. *M. James Spitzer, Jr.,*
argued the cause *pro hac vice* for appellants in No.
70–5032. With him on the briefs was *Melvin B.
Goldberg.*

---

*Together with No. 70–5032, *Alexander et al.* v. *Swank, Director,
Department of Public Aid of Illinois, et al.*, also on appeal from the
same court.

*Donald J. Veverka,* Assistant Attorney General of Illinois, argued the cause for appellees in both cases. With him on the brief were *William J. Scott,* Attorney General, and *Francis T. Crowe, Bernard Genis,* and *David E. Bradshaw,* Assistant Attorneys General.

*Solicitor General Griswold* and *Richard B. Stone* filed a brief for the United States as *amicus curiae* urging affirmance in both cases.

MR. JUSTICE BRENNAN delivered the opinion of the Court.

Appellants, two college students and their mothers, brought this class action in the District Court for the Northern District of Illinois alleging that § 4–1.1 of the Illinois Public Aid Code, Ill. Rev. Stat., c. 23, § 4–1.1 (1967) and the implementing Illinois Public Aid Regulation 150 violate the Equal Protection Clause of the Fourteenth Amendment, and, because inconsistent with § 406 (a)(2)(B) of the Social Security Act, 42 U. S. C. § 606 (a)(2)(B), also violate the Supremacy Clause of the Constitution.[1]   Under the Illinois statute and regula-

---

[1] Section 4–1.1 of the Illinois Public Aid Code, Ill. Rev. Stat., c. 23, § 4–1.1 (1967), provides:

"Child Age Eligibility. The child or children must be under age 18, or age 18 or over but under age 21 if in regular attendance in high school or in a vocational or technical training school. 'Regular Attendance,' as used in this Section, means attendance full time during the regular terms of such schools, or attendance part time during such regular terms as may be authorized by rule of the Illinois Department for the purpose of permitting the child to engage in employment which supplements his classroom instruction or which otherwise enhances his development toward a self-supporting status."

Illinois Department of Public Aid Regulation 150 provides:

"Age Requirements:

"A. D. C. Dependent children under 18 years of age, unless 18 through 20 years of age and in regular attendance in high school or vocational or technical training school. (This does not include 18 through 20 year old children in college.)"

tion needy dependent children 18 through 20 years of age who attend high school or vocational training school are eligible for benefits under the federally assisted Aid to Families With Dependent Children (AFDC) program, 42 U. S. C. § 601 *et seq.*, but such children who attend a college or university are not eligible.[2]   Section 406 (a)(2) of

---

[2] Appellant Loverta Alexander lives with her son Jerome in Chicago.  Jerome reached his 18th birthday in August 1968 and enrolled in junior college about a month later.  In early October a Cook County welfare officer notified Mrs. Alexander that the AFDC benefits received by her since 1963 would be terminated as of November 1, 1968.  Though Mrs. Alexander was able to obtain general assistance benefits from the State, the termination of AFDC payments resulted in a loss of $23.52 per month in the family's income. The only reason given by the State for the termination was that Jerome had reached his 18th birthday and was not attending high school or vocational school.

Appellant Georgia Townsend is the sole support of Omega Minor, her only child.  Mrs. Townsend, who is disabled, received AFDC benefits for herself and her daughter from 1953 through 1960. Thereafter she received an AFDC grant for Omega, and benefits for herself under the Aid to the Disabled provisions of the Social Security Act, 42 U. S. C. § 1351 *et seq.*  In September 1966, Omega enrolled in junior college.  Two months later a Cook County welfare officer notified Mrs. Townsend that Omega's monthly AFDC payment would be canceled as of January 1967.  While Mrs. Townsend's disability payments were increased to meet her own needs, the loss of AFDC benefits resulted in a reduction of $47.94 per month in family income.  Again the only reason given was the failure to comply with the Illinois statute and regulation.

This action was brought by Mrs. Alexander under the Federal Civil Rights Act, 42 U. S. C. § 1983, seeking declaratory and injunctive relief against the termination of her AFDC benefits.  Mrs. Townsend intervened as a plaintiff on behalf of herself and her daughter Omega, and as a member of the class described in Mrs. Alexander's complaint.  The three-judge court, convened pursuant to 28 U. S. C. §§ 2281, 2284, held that appellants' complaint stated a cause of action under the Civil Rights Act, and was a proper class action under Fed. Rule Civ. Proc. 23.  Those holdings are not challenged in this Court.

the Social Security Act, on the other hand, defines "dependent child" to include a child "... (B) under the age of twenty-one and (as determined by the State in accordance with standards prescribed by the Secretary) a student regularly attending a school, college, or university, or regularly attending a course of vocational or technical training designed to fit him for gainful employment." A three-judge district court held that neither constitutional contention had merit and sustained the validity of the Illinois statute and regulation. 314 F. Supp. 1082 (1970). We noted probable jurisdiction, 401 U. S. 906 (1971). We hold that the Illinois statute and regulation conflict with § 406 (a)(2)(B) and for that reason are invalid under the Supremacy Clause. We therefore reverse on that ground without reaching the equal protection issue.

## I

Section 402 (a)(10) of the Social Security Act provides that state participatory plans submitted under the AFDC program for the approval of the Secretary of the Department of Health, Education, and Welfare (HEW) must provide "that aid to families with dependent children shall be furnished with reasonable promptness to *all eligible* individuals." (Emphasis supplied.) In *King* v. *Smith,* 392 U. S. 309 (1968), we considered whether a State participating in an AFDC program may, consistently with the Supremacy Clause, adopt eligibility standards that exclude from benefits needy dependent children eligible for benefits under applicable federal statutory standards. There was before us in that case a regulation of the Alabama Department of Pensions and Security that treated a man who cohabited with the mother of needy dependent children in or outside the home as a nonabsent "parent" within the federal statute. Since aid can be granted under § 406 (a) of the Federal

Act only if a "parent" of the needy child is continually absent from the home, Alabama's regulation resulted in the ineligibility of the children for benefits. We held that the Alabama regulation defined "parent" in a manner inconsistent with § 406 (a) of the Social Security Act and therefore that in "denying AFDC assistance to [children] on the basis of this invalid regulation, Alabama has breached its federally imposed obligation to furnish 'aid to families with dependent children . . . with reasonable promptness to all eligible individuals . . . .' " 392 U. S., at 333.

Thus, *King* v. *Smith* establishes that, at least in the absence of congressional authorization for the exclusion clearly evidenced from the Social Security Act or its legislative history, a state eligibility standard that excludes persons eligible for assistance under federal AFDC standards violates the Social Security Act and is therefore invalid under the Supremacy Clause. We recognize that HEW regulations seem to imply that States may to some extent vary eligibility requirements from federal standards.[3] However, the principle that accords substantial weight to interpretation of a statute by the department entrusted with its administration is inapplicable insofar as those regulations are inconsistent with the requirement of § 402 (a) (10) that aid be furnished "to *all eligible* individuals." (Emphasis supplied.) *King* v. *Smith,* 392 U. S., at 333 n. 34.

---

[3] See/ *e. g.,* HEW's so-called "Condition X" embodied in a regulation found in 45 CFR § 233.10 (a) (1) (ii), 36 Fed. Reg. 3866:

"The groups selected for inclusion in the plan and the eligibility conditions imposed must not exclude individuals or groups on an arbitrary or unreasonable basis, and must not result in inequitable treatment of individuals or groups in the light of the provisions and purposes of the public assistance titles of the Social Security Act." See also HEW, Handbook of Public Assistance Administration, pt. IV, 4210 (1962); Note, Welfare's "Condition X," 76 Yale L. J. 1222 (1967).

## II

It is next argued that in the case of 18–20-year-old needy dependent children, Congress authorized the States to vary eligibility requirements from federal standards. In other words, it is contended that Congress authorized the States to discriminate between these needy dependent children solely upon the basis of the type of school attended. Our examination of the legislative history has uncovered no evidence that Congress granted the asserted authority. On the contrary, we are persuaded that the history supports the conclusion that Congress meant to continue financial assistance for AFDC programs for the age group only in States that conformed their eligibility requirements to the federal eligibility standards.

Section 406 (a)(2)(B) makes dependent 18–20-year-olds eligible for benefits whether attending a college or university, or attending a course of vocational or technical training. The only discretion written into the statute permits a State to determine, "in accordance with standards prescribed by the Secretary," whether a particular student, without regard to whether his attendance is at a college or vocational school, is a student "regularly attending" a bona fide school.[4] This particularization of the area of state authority is itself cogent evidence that Congress did not also authorize the States to limit eligibility to students attending vocational school.

Nor is there anything in the legislative history of the evolution of § 406 (a)(2)(B) to support appellees' argument.[5] That history does show that whenever Congress

---

[4] See HEW Handbook, *supra*, n. 3, pt. IV, "Green Sheets," G–3220 (1965); cf. H. R. Conf. Rep. No. 682, 89th Cong., 1st Sess., 69–70 (1965).

[5] The United States, as *amicus curiae*, cites sections of the Social Security Act as supporting Illinois' contention that its college-vocational school distinction is authorized. For example, the United

extended AFDC eligibility to older children—from those under 16 to those 16–17, and finally to those 18–20— Congress left to the individual States the decision whether to participate in the program for the new age group. There is no legislative history, however, to support the proposition that Congress also gave to the individual States an option to tailor eligibility standards within the age group, and thus exclude children eligible under the federal standards.

The original Social Security Act provided aid only to dependent children under the age of 16. 49 Stat. 629. A 1939 amendment extended aid to children age 16–17 "regularly attending school," 53 Stat. 1380. The States were not, however, required to extend their AFDC programs to the 16–17-year age group. See H. R. Rep. No. 728, 76th Cong., 1st Sess., 28–29 (1939). But if a State chose to do so, not a word in the legislative history suggests that it might limit its choice to students attending schools selected by the State, and exclude children of the age group attending other schools.

In 1956 Congress deleted the school attendance requirement and provided for benefits for all dependent children of the 16–17 age group. 70 Stat. 850. The Senate Report on this bill stated that the bill would *permit* Federal sharing in assistance to such children" and also that the bill would *make* some additional needy children eligible

---

States refers to § 406 (a) which originally defined "dependent child" to include a child living with his "father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, or aunt." 49 Stat. 629. A statement by Senator Harrison during debate on this provision, 79 Cong. Rec. 9269, is said to establish that the States were not required to extend assistance for every relative listed in the section. Section 407 (b) is also cited as explicitly reserving to the States a choice whether to participate in certain parts of the AFDC program. But these are express authorizations to depart from federal eligibility standards; there is no express authorization in this case.

for aid." S. Rep. No. 2133, 84th Cong., 2d Sess., 30 (1956). (Emphasis supplied.) The Conference Report stated that the bill would *"eliminate* the requirement that a needy child between 16 and 18 years of age must be regularly attending school in order to be eligible for aid to dependent children." H. R. Conf. Rep. No. 2936, 84th Cong., 2d Sess., 42 (1956). Significantly, nothing in the legislative history of that change indicates that the States were at liberty to continue to limit eligibility to 16–17-year-olds attending school.[6]

The first provision for the age group 18–20 came in 1964 when benefits were authorized but limited to children attending high school or vocational school. 78 Stat. 1042. As in the case of the 1939 amendments extending aid to children 16–17 regularly attending school, the States had the choice whether to participate in this new program; S. Rep. No. 1517, 88th Cong., 2d Sess., 2 (1964), expressly stated that "extension of the program in this manner would be optional with the States." When in 1965 Congress amended § 406 (a)(2) (B) in the form now before us nothing was said to indicate that States that had adopted the 1964 program limited to children attending vocational schools were free to continue that limited program and not extend it to children 18–20 attending a college or university. The relevant Senate Report, S. Rep. No. 404, pt. 1, 89th Cong., 1st Sess., 147 (1965), implies the contrary, stating:

> "Under existing law States, at their option, may continue payments to needy children up to age 21 in the aid to families with dependent children program, providing they are 'regularly attending a high

---

[6] It appears that some States and the District of Columbia continued to limit payments to 16–17-year-olds attending school and to handicapped children prevented from doing so. HEW Public Assistance Report No. 50, Characteristics of State Public Assistance Plans under the Social Security Act (1964 ed.).

school in pursuance of a course of study leading to a high school diploma or its equivalent, or regularly attending a course of vocational or technical training designed to fit him for gainful employment.' The committee added an amendment extending this provision so as to include needy children under 21 who are regularly 'attending a school, college, or university.' "

Moreover, the Report notes that one of the purposes of the extension was to bring AFDC in line with the Old Age Survivors and Disability Insurance provisions of the Social Security Act, 42 U. S. C. § 401 *et seq.* Under that program an insured's child is eligible for insurance benefits if he is a full-time student under 22 years of age, and under § 402 (d)(7) this includes a student attending a college or university. S. Rep. No. 404 attributed to the provision under both programs a purpose to "assure, as far as possible, that children will not be prevented from going to school or college because they are deprived of parental support." S: Rep. No. 404, *supra,* at 147. This theme carried through the Conference Committee Report: "This amendment would broaden the type of schools that children over the age of 18 and under the age of 21 may attend and receive aid to families with dependent children payments in which the Federal Government will participate." H. R. Conf. Rep. No. 682, 89th Cong., 1st Sess., 69 (1965).[7]

In sum, when application of AFDC was extended to a new age group—in 1939 to 16–17-year-olds and in 1964 to 18–20-year-olds—Congress took care to make explicit

---

[7] HEW itself states: "Within the age limit set by the State, there should be a choice of attending a school, college, or university or taking a course of vocational or technical training for gainful employment." HEW, Handbook of Public Assistance Administration, *supra,* n. 3, pt. IV, "Green Sheets," G–3220 (1965).

that the decision whether to participate was left to the individual States. However, when application of AFDC within the age group was enlarged—in 1956 to all 16–17-year-olds and in 1965 to 18–20-year-olds attending college or a university—the evidence, if not as clear, is that financial support of AFDC programs for the age group was to continue only in States that conformed their eligibility requirements to the new federal standards. Any doubt must be resolved in favor of this construction to avoid the necessity of passing upon the equal protection issue. "Congress is without power to enlist state cooperation in a joint federal-state program by legislation which authorizes the States to violate the Equal Protection Clause." *Shapiro* v. *Thompson,* 394 U. S. 618, 641 (1969). Notwithstanding the view of the majority of the District Court, 314 F. Supp., at 1088–1089, we think there is a serious question whether the Illinois classification can withstand the strictures of the Equal Protection Clause. The majority justified the classification as designed to attain the twin goals of aiding needy children to become employable and self-sufficient, and of insuring fiscal integrity of the State's welfare program. We doubt the rationality of the classification as a means of furthering the goal of aiding needy children to become employable and self-sufficient; we are not told what basis in practical experience supports the proposition that children with a vocational training are more readily employable than children with a college education. And a State's interest in preserving the fiscal integrity of its welfare program by economically allocating limited AFDC resources may not be protected by the device of adopting eligibility requirements restricting the class of children made eligible by federal standards. That interest may be protected by the State's "undisputed power to set the level of benefits . . . ." *King* v. *Smith,* 392

U. S., at 334.   See *Dandridge* v. *Williams,* 397 U. S. 471 (1970).[8]

*Reversed.*

MR. CHIEF JUSTICE BURGER, concurring in the result.

I concur in the result reached by the Court, but add this brief comment.   In dealing with these cases—and the other AFDC cases on the Court's docket—it seems appropriate to keep clearly in mind that Title IV of the Social Security Act governs the dispensation of federal funds and that it does no more than that.   True, Congress has used the "power of the purse" to force the States to adhere to its wishes to a certain extent; but adherence to the provisions of Title IV is in no way mandatory upon the States under the Supremacy Clause. The appropriate inquiry in any case should be, simply, whether the State has indeed adhered to the provisions and is accordingly entitled to utilize federal funds in support of its program.   Cf. *Rosado* v. *Wyman,* 397 U. S. 397, 420 (1970).   I agree that the answer to that inquiry here must be in the negative; I therefore concur in the result reached by the Court.

---

[8] The concurring opinion below acknowledged that the reasonable basis for the classification would not be apparent if incentives to learn white- and blue-collar trades and the supply and demand for professional and labor positions were the same.   The opinion concluded, however, that the classification could be reasonable in the context of a labor market in which "the skills of manual laborers are in short supply," because in such a market, "as a means of utilizing limited state funds in an effort to channel persons into those employment positions for which the society has great need, the statutory discrimination between college students and post-high school vocational trainees is not purely arbitrary or invidious, but rather, a rational approach designed to correct a perceived problem."   314 F. Supp., at 1091.   Apart from the fact that nothing appears about the nature of the market, a classification that channels one class of people, poor people, into a particular class of low-paying, low-status jobs would plainly raise substantial questions under the Equal Protection Clause.