**UNITED LOW INCOME, INC., et al.,**
**Plaintiffs,**

**v.**

**Dean FISHER, M.D., individually and in his capacity as Commissioner of Health and Welfare for the State of Maine and his agents, employees and successors in office and all others acting in concert with him, Defendant.**

Civ. No. 12–124.

United States District Court,
D. Maine, S. D.

March 23, 1972.

Hugh Calkins, Susan Calkins, Robert E. Mittel, Portland, Me., for plaintiffs.

Keith Edgerly, Asst. Atty. Gen., Augusta, Me., for defendant.

### OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

This is a class action, Fed.R.Civ.P. 23(b) (2), against the Commissioner of the Maine State Department of Health and Welfare seeking a declaratory judgment and injunctive relief pursuant to 28 U.S.C. §§ 2201–2. Jurisdiction is properly invoked under the Civil Rights Act. 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983. Plaintiffs challenge, on statutory and constitutional grounds, the action

of the defendant Commissioner in terminating their Aid to Families with Dependent Children (AFDC) and medical assistance (Medicaid) benefits as of July 1, 1971. Plaintiff United Low Income, Inc. is a non-profit corporation, the membership of which is composed of low income people interested in protecting the rights of welfare recipients in the State of Maine. The individual plaintiffs are members of a class composed of parents with dependent children who have been receiving AFDC and Medicaid benefits under the State's unemployed father program (AFDC–U), but who were notified that their benefits were being terminated as of July 1, 1971. The facts have been stipulated.

I

The AFDC program is one of the categorical public assistance programs established by the Social Security Act of 1935, 42 U.S.C. § 301 et seq. (the Act). 42 U.S.C. §§ 601–44 (Title IV). As initially enacted, the program authorized payments on behalf of children who have been deprived of parental support or care by reason of the death, absence, or incapacity of a parent. 42 U.S.C. § 606. Maine, as well as every other state, participates in this basic program on a matching fund basis. 22 M.R.S.A. § 3741. As required by the Act, 42 U.S.C. § 602, the State has filed with the Secretary of Health Education and Welfare (HEW), and HEW has approved, a so-called Title IV plan providing for the payment of AFDC benefits.

In 1961, the Social Security Act was amended to permit the states, on an optional basis, to make payments on behalf of children whose need is due to the unemployment of the father. 42 U.S.C. § 607. The AFDC–U program is optional, and less than one-half of the states currently participate in it. See King v. Smith, 392 U.S. 309, 318 n. 13, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). In 1969, Maine elected to participate in the AFDC–U program. As required by the

Act, 42 U.S.C. § 607, the State filed with HEW, and HEW approved, a modified Title IV plan providing for the payment of AFDC–U benefits.

Maine also participates on a matching fund basis in the Medicaid program established by the addition of Title XIX to the Social Security Act in 1965, 42 U.S.C. § 1396. 22 M.R.S.A. §§ 3301–3453. While state participation in the Medicaid program is optional, if a state does wish to participate, Title XIX requires the state to submit for HEW approval a plan which must provide for making medical assistance available to all individuals receiving aid under one of the state's approved categorical assistance programs. 42 U.S.C. § 1396a(a) (10). Maine has filed, and HEW has approved, a Title XIX plan. This plan provides for making medical assistance available to all individuals receiving aid under the State's approved Title IV plan. Maine Medical Assistance Manual § 221.

In June 1971, the Maine Legislature enacted and the Governor approved the Supplemental Appropriations Act for the fiscal years ending June 30, 1972 and June 30, 1973, which expressed the "intent of the Legislature" that the Department of Health and Welfare terminate the AFDC–U program during the biennium. P. & S. L. Me. (1971) ch. 117. Pursuant to this directive, defendant notified the members of the plaintiff class that their AFDC–U and Medicaid benefits were to be terminated as of July 1, 1971. Defendant also has filed, and HEW has approved, a modified Title IV plan reflecting deletion of the AFDC–U program. No modification of the State's previously approved Title XIX plan has been filed for HEW approval, and HEW has advised defendant that such approval is neither required nor appropriate.[1]

The effect of Maine's elimination of the AFDC–U program is that those individuals formerly receiving AFDC–U benefits under Maine's Title IV plan are

1. Letter from Neil P. Fallon, Regional Commissioner, dated July 22, 1971.

no longer eligible for medical assistance under the State's Title XIX plan.

## II

■ Plaintiffs' principal attack has been a statutory one. They contend that the termination of their Medicaid benefits violates Section 1902(d) of the Act, 42 U.S.C. § 1396a(d), which provides in relevant part as follows:

*Modification; certification requirements*

(d) Whenever any State desires a modification of the State plan for medical assistance so as to reduce the scope or extent of the care and services provided as medical assistance under such plan, or to terminate any of such care and services, the Secretary shall, upon application of the State, approve any such modification if the Governor of such State certifies to the Secretary that—

Plaintiffs' argument is that the termination of their Medicaid benefits incidental to the discontinuance of Maine's AFDC–U program constitutes a "modification" of the State's Title XIX plan within the meaning of Section 1902(d),

which cannot be effected without prior approval by the Secretary pursuant to the prescribed certification by the Governor of the State. The Court disagrees. Although the termination of plaintiffs' Medicaid benefits is a consequence of the State's discontinuance of its AFDC–U program, no "modification" of its Title XIX plan is involved, and hence prior federal approval of the termination of plaintiffs' Medicaid benefits is not required by Section 1902(d).

■ Both the statutory language and the legislative history[2] of Section 1902(d) make clear the intent of Congress that approval by the Secretary is a condition precedent to any modification by a state of its Title XIX plan which would reduce or terminate the care and services previously provided. Bass v. Rockefeller, 331 F.Supp. 945 (S.D.N.Y. 1971). *Cf.* Bass v. Richardson, 338 F. Supp. 478 (S.D.N.Y.1971); Chicago Welfare Rights Organization v. Ogilvie, F.Supp. (N.D.Ill. Nov. 30, 1971). But it seems equally clear that the termination of eligibility for Medicaid benefits resulting from a state's discontinuance of the optional AFDC–U program does not fall within the scope of Section 1902(d). Section 1902(d) requires the Secretary's

---

2. Section 1902(d) was added to Title XIX of the Act in 1969 as part of a Congressional compromise between those favoring an expanding medical assistance program and those concerned about increasing state expenditures for Medicaid. Central to the Medicaid program as originally enacted in 1965 was the goal of comprehensive medical care for every American in need of such care. In implementation of this goal, Section 1903(e) of the Act, 42 U.S.C. § 1396b(e), precluded federal funding of a state's Medicaid program unless the state makes "a satisfactory showing" that it is expanding its program to the end that it will be furnishing such comprehensive care by July 1, 1975. 1965 U.S.Code Cong. & Admin.News p. 2025 (S.Rep.No.404, 89th Cong., 1st Sess. (1965)). In 1969 Congress reacted to the severe fiscal problems the Medicaid program had caused to the participating states, *see* 1969 U.S. Code Cong. & Admin.News pp. 1078–82 (S.Rep.No.91–222, 91st Cong., 1st Sess. (1969)); Stevens and Stevens, Medicaid:

Anatomy of a Dilemma, Law and Contemporary Problems, 348, 378–97 (Spring 1970), by suspending the operation of Section 1903(e) for two years until July 1, 1971 and extending for two years until July 1, 1977 the time within which the participating states would be required to achieve a comprehensive medical assistance program. 42 U.S.C. § 1396b(e). In conjunction with the two-year suspension and extension of Section 1903(e), Section 1902(d) was enacted for the purpose of insuring that the states would not indiscriminately cut back their Medicaid programs during the two-year suspension of Section 1903(e). *See, e. g.,* 115 Cong.Rec. 17702–04 (1969) (remarks of Senators Long, Harris and Ribicoff). The legislative history does not suggest, however, any Congressional intent in enacting Section 1902(d) thereby indirectly to prevent a state from abandoning another separate and distinct categorical assistance program in which the state has previously chosen to participate.

approval only when a state desires to modify its Title XIX plan so as to reduce or terminate the care and services provided under that plan. In discontinuing its AFDC–U program, Maine did not in any way modify any provision of its Title XIX plan, which continues to provide for payment of the same level of Medicaid benefits to all individuals receiving aid under the State's approved categorical assistance programs, including the State's approved Title IV program. Plaintiffs' ineligibility for medical assistance is not caused by any modification of Maine's Title XIX plan; rather, the termination of plaintiffs' eligibility for medical assistance results from the State's exercise of its option to discontinue the AFDC–U program.

Only one further comment is necessary. It is evident that to the extent Maine's present action limits the number of those eligible for medical assistance, it is regressing from the national goal of achieving comprehensive health care for the medically needy, in a manner which may be inconsistent with Section 1903(e) of the Act. *See* n. 2, *supra*.[3] For obvious reasons, however, plaintiffs do not here challenge continued federal funding of Maine's Medicaid program because of non-compliance with Section 1903(e). *Cf.* Townsend v. Swank, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (concurring opinion of Burger, C. J.); Rosado v. Wyman, 397 U.S. 397, 420, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). In the present case, plaintiffs raise only the narrow issue of whether Maine's action constitutes a "modification" of its Title XIX plan within the meaning of Section 1902(d).

The Court concurs with the view expressed by HEW, *see* Rosado v. Wyman, *supra* at 406–407, 90 S.Ct. 1207, 25 L. Ed.2d 442, and holds that Section 1902(d) does not apply in the circumstances here presented, where plaintiffs' eligibility for medical assistance is terminated, not as a result of any modifica-

tion of Maine's Title XIX plan, but as an indirect consequence of Maine's electing to delete the optional AFDC–U program from its Title IV plan.

### III

Plaintiffs' constitutional attack, based upon the Equal Protection Clause, is also without merit. Plaintiffs contend that the termination of their AFDC–U and Medicaid benefits results in an invidious discrimination between needy children whose need stems from the death, absence or incapacity of a parent and those whose need results from the unemployment of their father, thus denying the latter group the equal protection of the laws guaranteed by the Fourteenth Amendment. They argue that the right to welfare directly affects the right to maintain family integrity and, indeed, the "right to life itself." They assert that the right to welfare is, therefore, a "fundamental right," any burden on which must be justified by a "compelling state interest." *See, e. g.,* Shapiro v. Thompson, 394 U.S. 618, 634, 638, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (travel); Harper v. Virginia State Board of Elections, 383 U.S. 663, 667, 670, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) (voting); Reynolds v. Sims, 377 U.S. 533, 561, 562, 84 S.Ct. 1362, 12 L. Ed.2d 506 (1964) (voting); Skinner v. Oklahoma, ex rel. Williamson, 316 U.S. 535, 541, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942) (procreation). This argument, however, was flatly rejected by the Supreme Court in Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Upholding a Maryland maximum grant regulation which placed a ceiling on the amount an eligible AFDC family could receive, the Court in *Dandridge* clearly stated the equal protection test to be applied in welfare cases in the following words:

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely be-

---

3. It should be noted, however, that defendant contends Maine's outlay for Medicaid will increase in the current biennium.

cause the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." * * * "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." * * * "A statutory discrimination will not be set aside if any state of facts, reasonably may be conceived to justify it." * * * *Id.* at 485, 90 S.Ct. at 1161 (citations omitted).

The reasonable basis for the present classification is readily apparent. As declared by Congress, the purposes of the AFDC program are not only to aid needy children and to strengthen family life, but also "to help . . . parents or relatives to attain or retain capability for the maximum self-support and personal independence." 42 U.S.C. § 601.[4] The Supreme Court has implicitly recognized the validity of this goal. Dandridge v. Williams, *supra* at 486, 90 S. Ct. 1153, 25 L.Ed.2d 491. Unquestionably, Maine's decision no longer to participate in the optional AFDC–U program is consistent with the Congressional goal of maximum self-support and personal independence. Discontinuance of the program also serves a legitimate state interest in encouraging gainful employment as an alternative to welfare, as well as conserving state funds by reducing the welfare rolls. Dandridge v. Williams, *supra*; Henry v. Betit, 323 F. Supp. 418, 424 (D.Alaska 1971); *cf.* Macias v. Richardson, 400 U.S. 913, 91 S.Ct. 180, 27 L.Ed.2d 153 (1970), affirming without opinion, Macias v. Finch, 324 F.Supp. 1252 (N.D.Cal.1970).

Being persuaded that there is a reasonable basis for the classification here challenged, the Court holds that termination of plaintiffs' AFDC–U and Medicaid benefits does not deny them the equal protection of the laws. *Accord,* Cheley v. Burson, 324 F.Supp. 678 (N. D.Ga.1971); Henry v. Betit, *supra.*[5]

### IV

In accordance with the foregoing, judgment will be entered for defendant dismissing plaintiffs' complaint, without costs.

It is so ordered.

---

4. For the purpose of encouraging the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State, to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection, there is authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this part. The sums made available under this section shall be used for making payments to States which have submitted, and had approved by the Secretary, State plans for aid and services to needy families with children. 42 U.S.C. § 601.

5. *Cheley* and *Henry* rejected Equal Protection attacks upon the failure of Georgia and Alaska to initiate AFDC–U programs. Plaintiffs argue that these cases are distinguishable because here Maine is seeking to discontinue its program. The asserted distinction is without substance. If the failure to embark on such a program is not a denial of Equal Protection, plainly there is no denial of Equal Protection in terminating the program.