Janine STUART and Debbie Bliss, Plaintiffs,

Shirley Ann Ransom et al., Intervening Plaintiffs,

v.

Robert B. CANARY et al., Defendants.

No. C 72-452.

United States District Court, N. D. Ohio, W. D.

Dec. 27, 1973.

Joseph F. Vargyas, John P. Korn, Advocates for Basic Legal Equality, Toledo, Ohio, for plaintiffs.

Richard Cohen, Asst. Pros. Atty., Toledo, Ohio, Kevin F. Duffy, Asst. Atty. Gen., Columbus, Ohio, for defendants.

OPINION and ORDER

WALINSKI, District Judge:

This cause came to be heard on cross-motions for summary judgment filed pursuant to Rule 56(e), Federal Rules of Civil Procedure. Defendant has also filed a motion to dismiss and seeks to incorporate the claims contained therein into this motion.

The factual background is undisputed. In the early 1940's, Wisconsin began making Aid to Families with Dependent Children (hereinafter AFDC) payments to women as soon as the fact of their pregnancy became medically ascertainable. The Social Security Act (hereinafter Act) is at best ambiguous in its definition of "dependent child", as:

"A needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew or niece, in a place of residence maintained by one or more of such relatives as his or their own home, and (2) who is (A) under the age of eighteen, or (B) under the age of twenty-one and (as determined by the State in accordance with standards prescribed by the Secretary) a student regularly attending a school, college, or university, or regularly attending a course of vocational or technical training designed to fit him for gainful employment; * * *." 42 U.S.C., § 606(a).

A regulation was promulgated by the Department of Health, Education and Welfare (hereinafter HEW) in 1946 which would clarify the right of States to make AFDC benefits available to unborn children. The present form of that regulation is essentially unchanged. It reads, in pertinent part, as follows:

"(2) Federal financial participation is available in * * *

"(ii) payments with respect to an unborn child when the fact of pregnancy has been determined by medical diagnosis." See 45 C.F.R., § 233.-10(a)(1)(i).

The regulation is couched in terms which indicate that it is optional to the States. HEW considers participation in such programs optional and has filed an *amicus curiae* brief in support of that position.

The Court is cognizant of two proposed amendments to the Social Security Act during the past Congressional term, which would have denied AFDC benefits to the unborn.[1] Since neither of these amendments were reported out of committee, those proposed amendments can be cited only for the proposition that payments are presently being made to this class of recipients.

It is the contention of the plaintiff that the Social Security Act is to be interpreted so as to provide for compulsory coverage of unborn children, and HEW acceptance of the provision as an option is in contravention of the Act. Although this Court will consider the HEW policy as having some evidentiary weight, that policy can be in no way considered dispositive. The Supreme

---

1. A. Ways and Means Committee, U.S. House of Representatives H.R.1, Rep. 92–231 at 184:

"Your committee wants to make clear that an unborn child would not be included in the definition of a child. This will preclude the practice, now used in the AFDC program in some States, of finding that an unborn child does meet the definition, thereby establishing a 'family' even before the child is born."

B. Finance Committee, U.S. Senate, Sen. Rep.No. 92–1230, at 108:

"Regulations of the Department of Health, Education, and Welfare permit Aid to Families with Dependent Children payments for a child who has not yet been born. The committee bill would make unborn children ineligible for AFDC."

Court has, on at least two occasions, specifically disapproved HEW policies which:

> " * * * permitted States to vary eligibility requirements from the federal standards without express or clearly implied congressional authorization." Carleson v. Remillard, 406 U.S. 598, 599, 92 S.Ct. 1932, 1934, 32 L.Ed.2d 352 (1972).

See also Townsend v. Swank, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971), where the Court held:

> " * * * HEW regulations seem to imply that the States may to some extent vary eligibility requirements from federal standards. However, the principle that accords substantial weight to interpretation of a statute by the department entrusted with its administration is inapplicable insofar as those regulations are inconsistent with the requirements of § 402(a)(10) that aid be furnished 'to all eligible individuals' ". Id. at 286, 92 S.Ct. at 505. (Emphasis in original.)

■ The weight of authority, then, would place the burden upon the State to show a clear congressional intent to justify exclusion once it has been shown that a reasonable interpretation of the Act, consistent with its legislative intent, would afford benefits to those arguably within federal standards of eligibility. See, e. g., King v. Smith, 392 U. S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); Harris v. Mississippi State Dept. of Public Welfare, 363 F.Supp. 1293 (N.D.Miss.E.D., decided August 15, 1973).

Jurisdiction herein is predicated on the Civil Rights Act of 1871 (42 U.S.C. § 1983); 28 U.S.C., § 1331; 28 U.S.C., § 1343(3) and (4); 28 U.S.C., §§ 2201 and 2202. A motion to convene a three-judge court pursuant to 28 U.S.C., § 2281 et seq. has been withdrawn. Plaintiffs seek to represent members of a class of women, Ohio residents, whose pregnancies have been medically determined, and their unborn children, who are otherwise eligible to receive AFDC but are denied benefits until their pregnancies terminate in birth. The requirements of class representation pursuant to Rule 23, Federal Rules of Civil Procedure, have been met. Due to the nature of the relief sought, the Court will require no notice to the class.

■ Plaintiffs claim that the Ohio policy denying AFDC benefits to the unborn is a violation of the Supremacy clause. The Supreme Court has ruled that the Civil Rights Act of 1871 provides a vehicle for the protection of both statutory and constitutional rights. See, e. g., Greenwood v. Peacock, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966). 28 U.S.C., § 1343(3), is therefore a proper jurisdictional provision under which this Court can entertain the instant cause. The plaintiffs have deleted by amendment their equal protection claim on behalf of the unborn child in light of the holding in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L. Ed.2d 147 (1973).

It is uncontested that this action requires the Court to make a statutory interpretation. The courts previously faced with this issue have looked to that section of the Social Security Act which defines "child." The decisions have been replete with reference to various editions of Webster's International Dictionary, which define a "child" as inter alia:

> "An unborn or recently born human being; fetus; * * *." (Emphasis added.)

Defendants, in turn, urge upon the Court the commonly accepted definition of the term to mean one in being, ex-utero. A thorough perusal of the Act and its legislative history is singularly uninstructive on the congressional view in regard to the term "child."

Since the Supreme Court has held that acts of Congress are to be construed in such a manner as to give effect to their overall purpose, it becomes incumbent upon this Court to view that section of the Social Security Act which defines

congressional intent. The implementation section sets forth the remedial goals of the Act as follows:

"For the purpose of encouraging the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State, to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection * * *." 42 U.S.C., § 601.

Since the health, both mental and physical, of children is an integral part of the stability and well-being of family life, it is of some importance to relate the necessity of prenatal care to that end. Herbert G. Birch, in his article Functional Effects of Fetal Malnutrition, 134 Hospital Practice (March 1971) [hereinafter Birch], contends that after allowing for genetic factors, the most important determinant in birthweight is the adequacy of fetal nutrition. An article in Science News entitled Vitamins and the Fetus: The Benefits of B12, (April 7, 1973, at 122) indicates that the vitamin is an important element of fetal development and consequently, birthweight. The Birch study then, after discounting the genetic effect on low birthweight in order to localize the study on poor prenatal nutrition as a function of later physiological deficiencies, found:

"* * * as a measure of deficient intraüterine growth, a marked growth deficit clearly imposes an increased risk of gross neurological damage. Among groups of infants of very low birthweight (below 1,500 gm.), there is increased evidence of epilepsy, cerebral palsy, and severe mental retardation. Evidence from a variety of studies indicates that infants with lesser weight deficits at birth may suffer lesser but still measurable intellectual handicaps. Being more numerous, they may well warrant more concern from a public health standpoint. Retrospective as well as prospective data on several groups of children have shown generally lower scores on standard mental and psychological tests in association with lower birthweight. Moreover, test scores shown a progressive decrease with decreasing birthweight. Groups of low-birthweight children tend to achieve lower scores both in the pre-school years and at school age." Birch, supra at 135.

Other studies have examined prenatal deficients with a view toward the predictability that neurologic deficits would be associated with aberrations in perception, perceptualmotor integration, abstract reasoning and short attention span. It has become a medically accepted proposition that low-birthweight/prenatally-malnourished youth are universally more susceptible to personality disorders.

Although it may be argued that prenatal care is but a miniscule segment of the difficulties of the socioeconomically disadvantaged, that does not preclude the implementation of reparative measures. If adequate fetal nutrition can alleviate in any degree potential burdens upon the State toward the goal of familial betterment, inclusion of the unborn as eligible for AFDC coverage is indicated by the intent of Congress in implementing the Social Security Act.

In Townsend v. Swank, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971), the court struck down an Illinois policy which would allow payment of AFDC payments to children in vocational programs, preparing for low-status, low-income positions, but would deny those same benefits to those attending a college or university. Notwithstanding the equal protection problems raised by Roe, supra, it would seem to raise an even more invidious form of discrimination to

place upon the already economically disadvantaged the more serious and longer-lasting handicaps of birth defects and reduced intellectual capacity.

Studies have been conducted in Nashville, Tennessee and New York City to determine whether a correlation exists between low-birthweight and socioeconomic status. A direct statistical correlation was found. In fact, in order to eliminate the possibility of racial/genetic differences, the Nashville study stratified non-whites socioeconomically. Using 2,500 gm. as a reference point, it was found that on an economic distribution scale of 1 to 10, low-birthweight incidence uniformly increased from a low of 5.3% in the most fortunate group to a high of 23.3% in the poorest group. *Birch, supra* at 147.

The State of Ohio has recognized for over eighty years that the fact of pregnancy creates a duty in both the parents beyond that inherent in the marriage itself. On April 16, 1890, the legislature enacted a bill "To prevent abandonment and pauperism." In present form, that section (Ohio Revised Code; § 3113.01) reads:

> "No parent or other person charged with the maintenance of a legitimate or illegitimate child under eighteen years of age, or of a physically or mentally handicapped child under twenty-one years of age, *nor the husband of a pregnant woman*, living in this state, shall fail to provide such child or woman with the necessary or proper home, care, food and clothing." (Emphasis added.)

For an analysis of the legislative intent in the promulgation of that enactment *see* Seaman v. State, 106 Ohio St. 177, 140 N.E. 108 (1922).

 It therefore appearing to the Court that the intent of Congress in enacting the Social Security Act was to provide for the betterment of family life, the extension of AFDC benefits to the unborn is consistent with that goal; that a reasonable definition of the term "child" should include the unborn; and there is no basis for the contention that Congress has evidenced any intent, express or implied, to *exclude* the unborn, it is

Ordered that the plaintiffs' motion for summary judgment should be and hereby is granted. The Ohio policy of denying AFDC benefits to otherwise eligible applicants until the birth of a child is in conflict with the Social Security Act. It is further

Ordered that the defendants be and hereby are enjoined from denying AFDC benefits to eligible applicants as soon as the fact of pregnancy is medically ascertained. Since the intent of the Social Security Act and the effect of this Opinion is to afford prenatal care to the disadvantaged, and that goal could not be furthered by the awarding of compensatory damages, this Opinion is to have prospective application only. It is therefore reemphasized that the relief granted is solely injunctive and declaratory in nature.