497 F.2d 1032
 Jane DOE et al., Appellees,
v.
Honorable Calvin L. RAMPTON, Individually and in his
capacity as Governor of the State of Utah, and Paul S. Rose,
Individually and in his capacity as Executive Director of
the Utah State Department of Social Services, Appellants.
 No. 73-1864.
 United States Court of Appeals, Tenth Circuit.
 Argued April 16, 1974.
Decided June 7, 1974.
 
 Vernon B. Romney, Atty. Gen., Clair J. Jaussi and W. Michael Howery, Asst. Atty. Gen., Salt Lake City, Utah, for appellants.
 David S. Dolowitz, Salt Lake City, Utah, for appellees.
 Before LEWIS, Chief Judge, and SETH and McWILLIAMS, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is another in the continuing line of cases dealing with the interaction of state regulations or statutes with the federal statutes for providing Aid to Families with Dependent Children. The issue here is whether the State of Utah's regulations requiring a 'caretaker relative,' see 42 U.S.C. 606(a), in this instance a mother, to cooperate with the state in identifying and locating an absent parent, usually the father, with the duty of support for a minor child or children, are in conflict with the provisions of the Social Security Act of 1935, 401, 402(a)(10) and 406, 42 U.S.C. 601, 602(a)(10), and 606, and therefore void under the Supremacy Clause of the United States Constitution, Article VI, P2.
 
 
 2
 The complaint asserts the conflict of the regulations to raise the supremacy issue which is generally described as a 'statutory issue,' and also alleges that the state regulation requires some of the plaintiffs to reveal extramarital acts which constitute violations of Utah law; thus a Fifth Amendment claim. The complaint thus also seeks declaratory and injunctive relief.
 
 
 3
 All of the plaintiffs are citizens of the United States and the State of Utah. All are mothers who received AFDC payments in varying forms and amounts on behalf of themselves and their children from the Assistance Payments Administration of the Utah State Department of Social Services. All have been threatened with a reduction in AFDC assistance by the Assistance Payments Administration because they refuse to cooperate, for varying and individual reasons, in providing information regarding the absent fathers of their children.
 
 
 4
 The trial court, on cross-motions for summary judgment by the parties with stipulated facts, held that the state regulations were contrary to the federal statutes and enjoined the enforcement of the state regulations. Were it not for the fact that on May 3, 1973, the United States Department of Health, Education and Welfare promulgated certain regulations which the appellants contend authorized the state regulations here in question, we would feel compelled to affirm the judgment of the district court, without more, on the authority of Doe v. Swank, 332 F.Supp. 61 (N.D.Ill.1971), aff'd sub nom., Weaver v. Doe, 404 U.S. 987, 92 S.Ct. 537, 30 L.Ed.2d 539 (1971); Taylor v. Martin, 330 F.Supp. 85 (N.D.Cal.1971), aff'd sub nom., Carleson v. Taylor, 404 U.S. 980, 92 S.Ct. 446, 30 L.Ed.2d 364 (1971); Meyers v. Juras, 327 F.Supp. 759 (D.Or.1971), aff'd sub nom., Juras v. Meyers, 404 U.S. 803, 92 S.Ct. 91, 30 L.Ed.2d 39 (1971).
 
 
 5
 Sections R-6050 and P-6050 of the Utah State Department of Social Services, Assistance Payments Administration, Policy Manual, Vol. III, Income Maintenance Regulation, provide that:
 
 
 6
 'R-6050. The natural father (and mother) are equally responsible for support of their minor children. When a duty of support exists, appropriate action shall be taken by Assistance Payment workers to obtain support from the responsible parent.
 
 
 7
 'Parents of specified relatives, acting as payee for minor children in their care, must assist the Office of Assistance Payments in establishing paternity and in seeking support.
 
 
 8
 'P-6050. 1. When a duty of support exists on the part of the recipient, the Assistance Payment worker will initiate the following action:
 
 
 9
 'a. Determine if support payments are actually being received in full from the responsible parent.
 
 
 10
 'b. If these payments are being received, adjust the grant accordingly by deducting this amount from the Standard grant.
 
 
 11
 'c. If these payments are not being received, or are not in the amount ordered by the court, or being received irregularly, the following procedures shall apply:
 
 
 12
 '(1) The applicant/recipient (parent or specified relative) must assist the Assistance Payments Administration in seeking support for the eligible children in the home.
 
 
 13
 '(a) The District Assistance Payments Office shall request the applicant/recipient to provide absent parent information by completing and signing form 61-D, Referral for Duty of Support or Paternity.
 
 
 14
 . . . .str
 
 
 15
 '(c) If the applicant/recipient refuses to complete and/or sign the form 61-D, or if he refuses to cooperate in providing more absent parent information to the Bureau of Recovery Services, he shall be excluded from the grant. However, AFDC assistance shall not be denied an otherwise eligible AFDC child because the parent or specified relative refuses to assist. (See P-5130 for grant computation).
 
 
 16
 . . . . no
 
 
 17
 '(e) When an otherwise eligible parent with income refuses to assist in seeking support and is consequently excluded from the grant, the income of the parent shall still be used in computing the grant for the eligible children.
 
 
 18
 '(f) There shall be no waiver of the requirement that the applicant/recipient complete the form 61-D. The applicant/recipient, however, may have reason to request that duty of support action not be taken. If this occurs, the District Assistance Payment Office shall attach to the completed form 61-D a written explanation of the applicant/recipient's reasons. The Bureau of Recovery Services will arrange a personal interview with the applicant/ recipient before any action is initiated.
 
 
 19
 '(2) The eligible household will be provided with an appropriate grant less any other income.
 
 
 20
 '(3) The parent or specified relative will be instructed to refund to APA any support payment which is received.
 
 
 21
 . . . .ren
 
 
 22
 '2. A duty of support does not exist in the case of an unwed mother unless paternity has been legally established. However, the unwed mother is required to assist Assistance Payments workers in establishing paternity. The same procedures outlined above shall be followed whether paternity has or has not been established, except:
 
 
 23
 'a. When paternity has not been established, the unwed mother shall not be requested to sign form 421.
 
 
 24
 'b. The procedure shall not be initiated until the child is born.
 
 
 25
 'c. When the child is born, the unwed mother shall be allowed 30 days from the date of birth to agree to cooperate in establishing paternity. The District Assistance Payments Office shall not apply any sanction until the 30-day period is over.'
 
 
 26
 Sections R-6050 and P-6050 of the Income Maintenance Rgulation are not dissimilar to section 101-a of the New York Social Services law, as amended by Chapter 687, Section 1, of the Laws of New York 1972. In holding section 101-a invalid as being in conflict with the Federal Social Security Laws, the court in Shirley v. Lavine, 365 F.Supp. 818 (N.D.N.Y.1973) (three-judge court), stated that:
 
 
 27
 '. . . Every court that has considered the question of such conditions of eligibility has found itself compelled to invalidate them. To argue, as the state does here, that it is only the noncooperating mother who is penalized and not the innocent child or children is unrealistic. The distinction has been consistently rejected by the court.'
 
 
 28
 Despite the attempt of the State of Utah to characterize sections R-6050 and P-6050 as not an additional eligibility requirement, but rather a 'method of obtaining information so that actual need and therefore eligibility may be determined,' it is clear that the state conditions continued aid upon a mother's compliance with the sections. This is contrary to the teachings of Townsend v. Swank, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448, and our decision in Vialpando v. Shea, 475 F.2d 731 (10th Cir.), aff'd sub nom., Shea v. Vialpando, U.S. , 94 S.Ct. 1746, 40 L.Ed.2d 120, 42 U.S.L.W. 4559.
 
 
 29
 The amendment to 45 C.F.R. 233.90, 38 Fed.Reg. 10940 (No. 85, May 3, 1973), by the Department of Health, Education and Welfare, and upon which the appellants place much reliance, is set out along with its history in Shirley v. Lavine, 365 F.Supp. 818 (N.D.N.Y.), and need not be repeated here. That court's reasoning is persuasive. It said in part:
 
 
 30
 '. . . The amendment is a departure from the agency's past position. It also runs counter to the consistent construction placed on the Social Security Act by the courts.
 
 
 31
 'In our view the amended regulation does little to support the validity of (the state statutory provision).
 
 
 32
 "The principle that accords substantial weight to interpretation of a statute by the department entrusted with its administration is inapplicable insofar as those regulations are inconsistent with the requirement of 402(a)(10) that aid be furnished 'to all eligible individuals." (Townsend v. Swank, 404 U.S. at 286, 92 S.Ct. 502, 30 L.Ed.2d 448.).'
 
 
 33
 The court in Shirley also noted that because HEW, prior to the promulgation of the May 3, 1973, amendment, had in fact never considered that a noncooperating AFDC recipient could be cut off from benefits, it could scarcely be said that the agency's interpretation was 'settled' or 'followed consistently,' see New York Dept. of Social Services v. Dublino, 413 U.S. 405, 420, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973). The court in Shirley also said:
 
 
 34
 'Moreover, the unbroken line of court decisions construing these provisions and the absence of any Congressional corrective action persuade us that the agency's new interpretation is in error and not a guidepost to be followed judicially.'
 
 
 35
 Although the plaintiff-appellees' complaint alleges constitutional issues which must be substantial enough to establish federal jurisdiction, the district courts have been admonished by the Supreme Court to avoid a constitutional ruling, if possible, by a decision of the 'statutory' issue. Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442. Furthermore, it has now been decided that the single judge court may and should decide the 'statutory' claim. The Court so held in Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577. A divided Court there decided that although the allegation of a constitutional issue raised a substantial constitutional question, a three-judge court need not be convened, and the single judge court could treat the supremacy issue as pendent, and decide it. If such a decision was contrary to the state's position, this would end the case; if it were not contrary, a three-judge court would then have to decide the constitutional question.
 
 
 36
 The decision in Hagans is a new development of substantial proportions in the lore relating to three-judge courts; the appeal, as the one before us, goes in such instances to the Court of Appeals and not to the Supreme Court. The result is that there never was a three-judge court, and 'jurisdiction' of the action remained in the one-judge court. The Court does not discuss the 'substantiality' of the constitutional issues as this relates to the requirement that a three-judge court be convened. The consequence is, of course, to make it easier for the plaintiff to come within 28 U.S.C. 1343. The allegations of the constitutional issues in the case before us are much more substantial than in the cited case of Hagans v. Lavine.
 
 
 37
 Thus, it is apparent that the single judge district court followed the procedure permitted by Hagans v. Lavine in deciding the statutory question over which it had pendent jurisdiction. Its decision in this respect, which we hold to be correct, obviated the need to determine the constitutional challenges as well as the need to convene a three-judge court under Hagans v. Lavine.
 
 
 38
 The judgment of the district court is therefore affirmed.