371 So.2d 190 (1979)
Doris TARVER, Petitioner,
v.
STATE of Florida, DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, DIVISION OF SOCIAL AND ECONOMIC SERVICES, Respondent.
No. 77-2449.
District Court of Appeal of Florida, Fourth District.
May 16, 1979.
*191 Charles R. Colbrunn, Orlando, for petitioner.
Douglas E. Whitney, Dist. VII Legal Counsel, Orlando, for respondent.
HERBERT STETTIN, Associate Judge.
Petitioner, a mother with four children, has been receiving benefits under the Aid to Families with Dependent Children (AFDC) program since May, 1977. This program derived in part from Title IV A of the Social Security Act is "designed to provide financial assistance to children who are deprived of the care and support of one or both parents." Fla. Admin. Code, Chapter 10C-1.41.
Determinations of eligibility are arrived at by using what is termed the "Rateable Reduction", which is based on the number of persons whose needs are considered. From this figure is subtracted the total net income available to the applicant in order to arrive at a `deficit'. This `deficit' will be the grant amount. Fla. Admin. Code, Chapter 10C-1.70. At the time of her original petition, the mother was re-married, and her husband's only income was monthly social security disability payments in the amount of $39.30. In determining the family's eligibility for assistance, only the needs of the four children were included to arrive at the proper rateable reduction. The mother's needs were not considered due to AFDC agency policy in effect which stated:
"The needs of the following persons shall be included in the budget... . The parent(s) living in the home or if away from home meets the reasons for and conditions of temporary absence. Exceptions: The parent and step parent may choose to be included only when the parent is determined incapacitated." (Emphasis supplied) AFDC policy found in Manual 009, Section 2, Chapter V.
Apparently this policy excluding remarried spouses is based on the notion that once the mother has remarried the husband has a legal obligation to support her, and therefore the only persons dependent on the mother are her children. In any event, the eventual grant was based on a rateable reduction for four persons.
The assistance payments continued until August 1977. It was at that time the agency ascertained that Petitioner had obtained employment two months before at an estimated monthly wage of $354.02. Since this exceeded the rateable reduction, the agency notified Petitioner of their intention to terminate the payments as of September 1977. Petitioner requested a hearing and the benefits were reinstated, as provided by the rules, during the pendency of the hearing. *192 The hearing was held on September 26, 1977, as a result of which a final order terminating all assistance payments was entered on October 18, 1977. This result was obtained by deducting certain work related expenses from Petitioner's monthly income, and then including the husband's disability payments for a resulting figure of $354.59. Since the income figure was greater than the rateable reduction of $190.96, the assistance payments were terminated. The mother now brings this Petition for a Writ of Certiorari to review the final agency action denying her appeal before the agency.
Petitioner now argues not that the agency wrongfully terminated the award on October 18, 1977, but that they improperly excluded her needs in May 1977. Had her needs been included at that time, the increased rateable reduction coupled with concomitant deductions and income disregards, would have entitled her to receive the sought-after benefits even while she was receiving wages from her new job.
While a state can preserve the fiscal integrity of its welfare program by setting the level of benefits to be awarded or by establishing criteria for measuring needs, the question of whether a certain class of persons is eligible to receive assistance is to be determined by reference to federal law. Jefferson v. Hackney, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972).
Once a class has been accorded eligibility by federal standards, a state may not impose any restrictions upon that class. Townsend v. Swank, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971). And any attempt to impose such restrictions, and thus deny benefits to a federally recognized class, must be struck down as inconsistent with federal standards, and hence invalid under the Supremacy Clause of the United States Constitution, § 8, Cl. 4, Art. 1, King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); Townsend v. Swank, supra; Carleson v. Remillard, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972).
There do not appear to be cases clearly on point to the issue involved herein. From prior United States Supreme Court cases, however, a test for analyzing concurrent state and federal legislation in this area of welfare assistance can be gleaned. The two-fold test requires a review of the Federal Act to determine if there is any basis for eligibility. Once facial eligibility has been established, it must then be determined whether there exists any congressional authority for a state exclusion. If none can be found, the state standard is in conflict with a federal scheme and therefore invalid under the Supremacy Clause.
Our first duty then, is to determine whether Petitioner qualifies as an "eligible individual" under the Act. 42 U.S.C.A. § 606. This issue seems to be answered in the affirmative by the federal courts in this circuit. In Lopez v. Vowell, 471 F.2d 690 (5th Cir.1973), the court struck down a Texas provision which excluded married relatives from caretaker eligibility. The court there stated:
"Section 406(b)(1) defines `aid to families with dependent children' as payments to meet the needs of both the dependent children and the caretaker relative with whom the children reside. Nowhere does the statute indicate that the caretaker must be a single individual in order for his or her needs to be included in calculating the amount of the AFDC grant." (emphasis supplied)
The same result was reached in two other cases, Rodriguez v. Vowell, 472 F.2d 622 (5th Cir.1973) cert. denied 412 U.S. 944, 93 S.Ct. 2777, 37 L.Ed.2d 404; and Reyna v. Vowell, 470 F.2d 494 (5th Cir.1972) where the court clearly held that a parent's needs are to be considered in determining eligibility:
"The plain language of the Social Security Act, its legislative history, and the relevant decision precedent make clear that the needs of the caretaker relative ... are to be considered in deciding if a family is eligible for an AFDC grant." and further, "Under federal law, a State's procedure for measuring the *193 needs of an AFDC family must first take into account the group needs of the family as a whole  i.e., the needs of the caretaker relative as well as the need of all of the dependent children."
The second phase of our analysis is also resolved by Judge Dyer's well reasoned opinion in Lopez, supra. He considered the language, legislative history, and purpose of the Act, and noted that the Act not only contemplated the presence of the caretaker's spouse, but also provided under certain circumstances for aid to the spouse. "This," he observed, "is cogent evidence that Congress did not authorize the States to limit eligibility to unmarried caretakers."
It is clear under federal law that Petitioner in this case is accorded the status of "eligible individual" as that term is used in the Act, and since the Act makes it clear that aid under this program is to be furnished to all eligible individuals, any state legislation in general, and State DFS Manual 009, Section II, Chapter V, in particular, which conflicts with the federal directive is invalid.
We therefore hold that petitioner was entitled to have her needs considered in determining the family's eligibility for assistance and that, on remand, these needs are to be considered in determining the grant amount.
Petitioner also asserts other grounds as error which merit brief mention. One of these refers to the denial by the agency of a standard child care deduction as provided by the Florida Administrative Code 10C-1.68, which reads in pertinent part:
"When a child, parent or relative is employed, the Department recognizes that certain expenses are considered as incidental to earned income and are to be deducted from the balance of gross income following disregards. The employed person may choose to accept standards or provide documentation of actual and reasonable work related expenses/work related child-care costs... If the employed person (parent or relative) chooses to accept the standard amount for work-related child-care cost, the standard shall be deducted. If the employed person (parent or relative) chooses to document work-related child-care costs, he must assume total responsibility for obtaining and providing the information to the worker."
Respondent contends that no deduction, standard or otherwise, is available until such time as the applicant can substantiate some actual expenditure for child care. In support of this position they again offer agency policy set forth in DFS Manual 009, Section II, Chapter V, which states:
"No amount will be included for child care until required verification or documentation is received for child care."
According to the Findings of Facts as stated in the Final Order of the agency, Petitioner's Brief, Appendix II, the testimony did not indicate whether any child care expenses had actually been incurred, but Petitioner contends that there is no such requirement in section 1.68. It is clear, however, from the cases cited above, that a state may properly allocate its economic resources by exercising its "undisputed power to set the level of benefits" in order to preserve the fiscal integrity of its welfare programs. See also Parks v. Harden, 504 F.2d 861 (5th Cir.1974). In this case, then, no error has been shown in requiring actual evidence of child-care expenses.
Accordingly, the Petition for the Writ of Certiorari is granted and the cause is remanded for action consistent with the principles expressed herein.
ANSTEAD and DAUKSCH, JJ., concur.