Carolyn WHITFIELD, Individually and on behalf of her unborn child, Cynthia Whittier, by her next friend Clyde Leonard, individually and on behalf of her unborn child and on behalf of all others similarly situated

v.

Steven A. MINTER, Individually and as Commissioner of the Massachusetts Department of Public Welfare, et al.

Civ. A. No. 73–3051–F.

United States District Court,
D. Massachusetts.

Dec. 26, 1973.

Paula Gold, Dorchester, Mass., for plaintiff.

Danielle de Benedictis, Asst. Atty. Gen., Boston, Mass., for defendants.

## OPINION

FREEDMAN, District Judge.

Plaintiffs have brought this action for injunctive and declaratory relief under 42 U.S.C. § 1983 to secure rights, privileges and immunities established by the Fourteenth Amendment to the Constitution of the United States and by Title IV, pt. A of the Social Security Act, 42 U.S.C. § 601 et seq. Plaintiffs on behalf of themselves and others similarly situated seek to have this Court declare invalid the policy and practice of the Massachusetts Department of Public Welfare which denies benefits under the Aid to Families with Dependent Children (hereinafter called AFDC) program to an unborn child and mother until the actual birth of the child in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States and the Social Security Act and Federal Regulations.

Arguments on plaintiffs' seeking preliminary and permanent injunctive relief against the continued enforcement of this policy were heard on December 10, 1973. It was agreed at that time by the parties that the motion for preliminary injunction would be consolidated with the hearing on the merits of this case under Rule 65(a)(2) of the Federal Rules of Civil Procedure. Plaintiffs had previously filed a memorandum of law in this matter but defendants declined to file a memorandum on behalf of the Department of Public Welfare, although the Court had presented them with an opportunity to do so.

Defendants had also filed a motion to dismiss on grounds that the Court lacked jurisdiction over the subject matter and that the complaint failed to state a claim upon which relief can be granted. The Court denies the motion to dismiss and proceeds to discuss the claim on its merits.

After consideration of the pleadings filed in this case, oral arguments and stipulation of facts, the Court makes the following findings of fact:

1. Plaintiff Carolyn Whitfield is 19 years old, a citizen of the United States, and resides in the City of Cambridge, Massachusetts.

2. Plaintiff Cynthia Whittier is 16 years old, a citizen of the United States, and resides in the City of Orange, Massachusetts.

3. Defendant Stephen A. Minter is the Commissioner of the Department of Public Welfare and, as such, is charged

with the responsibility of administering the statewide program through regional and local offices staffed by employees under his direct supervision and control.

4. Defendant Peter C. Goldmark, Jr. is the Secretary of the Massachusetts Executive Office of Human Affairs and, as such, is charged with the responsibility of coordinating the activities, procedures and practices of the Department of Public Welfare.

5. Defendant, the Massachusetts Department of Public Welfare, is the state agency charged by Massachusetts General Laws, Chapter 118, with the responsibility of administering the AFDC program in the Commonwealth of Massachusetts.

6. Plaintiff Whitfield, unmarried and unemployed without any income from any source, applied for AFDC at the Cambridge Welfare Service Office on or about August 17, 1973. At the time of her application it had been determined by a physician at the Cambridge City Hospital that she was pregnant. The father of her unborn child is wholly and continuously absent. She has no other children.

7. Plaintiff Whittier, unmarried and unemployed without any income from any source, applied for AFDC at the Orange Welfare Service Office on or about July 20, 1973. At the time of her application she had been medically determined to be pregnant, and the father of her unborn child is also wholly and continuously absent. She has no other children.

8. Both plaintiffs' (Whitfield and Whittier) applications for AFDC were denied solely because their children had not been born at the time they submitted their applications for AFDC.

9. It is the statewide policy of the Department of Public Welfare that women who have been medically determined to be pregnant and their unborn children are not eligible for AFDC until the actual birth of the child.

10. There are more than 500 women in similar situations as the plaintiffs who are denied AFDC solely because their children have not been born at the time of application.

11. On September 6, 1973, plaintiffs filed this complaint pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure for a class action seeking injunctive and declaratory relief under 42 U.S.C. § 1983, and 42 U.S.C. §§ 2201 and 2202.

■ The Court finds that plaintiffs may properly maintain this action as a class action since, from fact No. 10 above, the class is so numerous that joinder of all members is impracticable; there are questions of law or fact common to the class; the claims of the representative parties are typical of the claims of the class, and the representative parties will fairly and adequately protect the interests of the class. In addition, the Court finds the defendants and their agents have acted and refused to act on grounds generally applicable to the class, thereby making appropriate declaratory and injunctive relief with respect to the class as a whole.

*Jurisdictional Question*

Plaintiffs have claimed that the Welfare Department policy denying AFDC to pregnant mothers and their unborn children denies rights granted to the plaintiffs by the Social Security Act, 42 U.S.C. § 602 et seq., and further deprives them of the equal protection of the laws under the Fourteenth Amendment.

■ This Court finds it has jurisdiction to hear this matter pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1343(3), and 28 U.S.C. § 2201. 42 U.S.C. § 1983 allows a cause of action to any person who under color of state law is deprived of any right, privilege or immunity secured

by the Constitution and federal laws. 28 U.S.C. § 1343(3) grants original jurisdiction in the district courts to redress the deprivation under color of state law of "any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States." The Court holds, therefore, that plaintiffs' claim of deprivation of equal protection falls squarely within the jurisdictional provisions of 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3). 28 U.S.C. § 2201 grants to district courts the power of making declaratory judgments; that is, declaring the rights and legal relations of any interested party seeking such declaration, giving it the full force and effect of a final judgment or decree.

Furthermore, in recent years a number of federal courts in cases involving welfare recipients have exercised pendant jurisdiction in order to consider federal statutory claims and constitutional claims in a single proceeding. King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); Townsend v. Swank, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1972); Carleson v. Remillard, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972).

Discussing these cases very briefly— in *King*, the Court struck Alabama's "substitute father" regulation[1] as inconsistent with the definition of parent, in 42 U.S.C. § 606(a). *Townsend* involved a review of Illinois' practice of denying benefits to otherwise needy children between the ages of eighteen and twenty-one who attended a college or university, while granting such benefits to those who attended high school or vocational training institutions. This practice was found to conflict with 42 U.S.C. § 606(a)(2)(B).[2] The *Carleson* case concerned itself with a question as to whether California legally could deny AFDC benefits to children of military enlistees under the "continued absence from the home" standard in 42 U.S.C. § 606(a). There the court held California could not so discriminate.

In scrutinizing these cases closely, they conclude that AFDC eligibility standards are federal standards and state that:

" . . . at least in the absence of congressional authorization for the exclusion clearly evidenced from the Social Security Act or its legislative history, a state eligibility standard that excludes persons eligible for assistance, under federal AFDC standards violates the Social Security Act and is therefore invalid under the Supremacy Clause." *Townsend*, 404 U.S. at 286, 92 S.Ct. at 505.

Summing up, therefore, this Court clearly has jurisdiction to hear the subject matter of the current complaint.

*Conclusions of Law*

The Court now reaches the merits of plaintiffs' claims; namely, does the Massachusetts policy of denying AFDC benefits to women who are pregnant and their unborn children violate the Social Security Act so as to be invalid under

---

1. The regulation denied "AFDC benefits to the children of a mother who 'cohabits' in or outside her home with any single or married able-bodied man." *King*, 392 U.S. at 311, 88 S.Ct. at 2130. Since the Court construed "parent" to mean one legally liable for a child's support, the regulation was in conflict with the federal standard.

2. In Section 606(a)(2)(B), a "dependent child" is defined as a needy child "(2) who is . . . (B) under the age of twenty-one and . . . a student regularly attending a school, college, or university, or regularly attending a course of vocational or technical training designed to fit him for gainful employment."

the Supremacy Clause [3] and also violate as well the guarantee of equal protection of the laws under the Fourteenth Amendment to the United States Constitution? Simply stated: does the phrase "dependent child" as used in the Social Security Act include the unborn children of otherwise pregnant women?

It is noted that Webster defines child as "an unborn or recently born human being." [4] Legislative history shows no specific interest on the part of Congress either to exclude or include the unborn child, but it does show a continuing concern for the development and well-being of children whose parents are unable to take care of them. Although the original definition of dependent child [5] is not clear, the pronouncements surrounding the passage of the 1935 Social Security Act is illuminating as to its thinking at the time, such as the following:

"In title V it is proposed that aid be given the states for other services very essential to the security of children. The first of these is aid for maternity and infancy welfare . . . The need for such services has increased with the depression, and the fact that the maternal mortality rate in this country is much higher than in nearly all other progressive countries is certainly not to our credit." Committee on Ways and Means Report, H.R.Rep. No. 615, 74th Cong., 1st Sess. 12 (1935).

Since 1935, later Acts of Congress continued to show concern with child-hood problems ranging from early childhood treatment to disability provisions. In 1962, the House Report defined the term "child welfare services" to mean:

" . . . public social services which supplement or substitute for, parental care and supervision for the purpose of (1) preventing or remedying, or assisting in the solution of problems which may result in neglect, abuse, exploitation, or delinquency of children." H.R.Rep. No. 1414, 87th Cong., 2d Sess. (1962).

Early detection of mentally and physically crippling childhood problems were dealt with in 1965. [6] Congress then established new programs dealing directly with maternity and infant care in low income areas.

" . . . States use Federal Funds, together with State and local funds to pay the costs of conducting prenatal and postpartum clinics where mothers may receive family planning services if they wish them; for visits by public health nurses to homes before and after babies are born to help mothers care for their babies; for well-child clinics where mothers can bring their babies and young children for examination and immunizations, where they can get competent advice on how to prevent illnesses and where their many questions about the care of babies can be answered. Such measures have been instrumental in the reduction of maternal and infant mortality, especially in rural areas. Funds are used to make doctors, den-

3. Article VI, Clause 2 of the Constitution provides:
"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."
4. Webster's Third New International Dictionary (1971).
5. Sec. 606. When used in this title—
    (a) The term "dependent child" means a needy child under the age of eighteen "who has

been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece, in a place of residence maintained by one or more of such relatives as his or their own home . . . " 42 U.S.C. § 606; 49 Stat. 629 (1935).

6. H.R.Rep.No.213, 89th Cong., 1st Sess. (1965).

tists and nurses available to schools for health examinations and they are also used for immunizations. These funds supported 134 mental retardation clinics in 50 states where over 30,000 children received diagnostic and counseling services last year." H.R.Rep.No. 544, 90th Cong.; 1st Sess. (1967).

In this same session of the 90th Congress, family planning services were established which exist to the present time.

"Because the brief period of pregnancy is too short a time in which to detect and correct all the factors adversely affecting the outcome of pregnancy, continuing health supervision for mothers who had complications of pregnancy is essential. This makes it possible to improve the health of mothers for a subsequent pregnancy and to begin prenatal care early. It is also essential to provide periodic medical examinations for women who are receiving family planning services." H.R.Rep.No. 544, 90th Cong., 1st Sess. (1967).

■ In 1972, Congress suggested amendments in legislation which clearly would have denied AFDC benefits to all unborn children.[7] These amendments were deleted before passage which this Court interprets as Congress' desire to leave intact at the present time the flexible policy of the Department of Health, Education and Welfare.

From all this past history of Congressional action, it is clear that Congress was aware of the need to promote and encourage prenatal care and has urged the states to expand their own progress to this end. From this entire review of Congress' treatment of the dependent child, this Court does not find evidence of an intent to exclude either unborn children as a group or unborn children of otherwise childless women from benefits under the Social Security Act.

■ Going one step further, the Social Security Act was designed as "a measure which will benefit the entire public."[8] For a state to qualify for matching federal funds in the administration of programs under the Act, the eligibility standards of the state must conform to the policies enumerated in the Act.[9] It has been shown earlier the history of continuing Congressional concern by the development and expansion of prenatal care programs. How inconsistent it would be to say this policy can be accepted on the one hand and then to say on the other that unborn children should be excluded from the definition of "dependent children" and deny the AFDC benefits to pregnant women, whether otherwise childless or not!

■ This Court must rule to the contrary, namely that the state practice of excluding AFDC benefits to plaintiffs and their class is not supported by HEW regulations, is at odds with the underlying policy of the federal statute and must fall based on relevant Supreme Court decisions. To further buffer this holding, Massachusetts has agreed by statute to follow the provisions of the Social Security statute and the regulations issued thereunder in administering the AFDC program. Massachusetts General Laws, Chapter 18, Section 10.[10] Since Massachusetts participates and shares in federal reimbursements, it must act in conformity with the require-

---

7. H.R.Rep.No.92–231, 92nd Cong., 2nd Sess. 184 (1972) ; S.Rep.No.92–1230, 92nd Cong., 2nd Sess. 108 (1972), U.S.Code Cong. & Admin.News, p. 4989.

8. H.R.Rep.No.615, 74th Cong., 1st Sess. 16 (1935).

9. Stoddard v. Fisher, 330 F.Supp. 566, 571–572 (D.Me., 1971).

10. Ch. 18, § 10 states: "The department [of public welfare] shall take such action as may be necessary or desirable for carrying out its programs and purposes in conformity with all requirements governing the granting of federal aid to the commonwealth."

ments of the federal social security act. *King, Townsend* and *Carleson* cases, *supra.* As was stated in Doe v. Lukhard, 363 F.Supp. 823, at page 829 (E.D. Va. 1973):

> "HEW and its predecessors have adopted the underlying determination that unborn children are eligible under the Social Security Act; the state may not in violation of the Supremacy Clause prescribe to the contrary."

Based on the conclusion that Massachusetts policy of excluding AFDC to plaintiffs and their class violates the Supremacy Clause, it really is not necessary to discuss at length whether such policy also violates the guarantee of equal protection of the laws under the Fourteenth Amendment to the United States Constitution. Suffice it to say, this Court believes if the department of public welfare's denial for AFDC applications to the plaintiff rests solely because their children had not yet been born and granted the application to other women whose children had been born, then it very well could violate plaintiffs' rights to equal protection of the laws. As has been fully developed earlier, the purpose of the AFDC program and succeeding Congressional amendments is to provide for the security and well-being of needy dependent children and the relationship to that end between the health interests of the mother and the unborn *child is clear to this Court.*

In Stoddard v. Fisher, 330 F.Supp. 566 (D.Me., 1971), otherwise needy families of military enlistees challenged Maine's practice of denying AFDC benefits, while distributing such benefits to families of military draftees. In holding the practice illegal, the court stated that, as in *King, supra:*

> " . . . *a conflict existed because* the Congressional purpose underlying the statute was to assist all needy children who met the federal standards of eligibility. By imposing a more restrictive standard . . . [the State] prevented some families, eligible under the federal statute,

from receiving benefits. This, the Court determined, violated the broad purpose of the Social Security Act." 330 F.Supp. at 570.

In a most recent decision, New Hampshire's practice of denying AFDC benefits to otherwise childless women was struck down as in conflict with the Social Security Act and therefore violative of the Supremacy Clause. Carver et al. v. Hooker, 369 F.Supp. 204 (D.N.H., 1973).

This Court follows the same approach and reaches the same conclusion.

Furthermore, the Court notes with interest that the taxpayers of Massachusetts actually benefit by allowing AFDC assistance to women and their unborn children because 50% of the benefits would be reimbursed by the federal government to Massachusetts, whereas by rejecting the plaintiffs as heretofore, the women over 18 years of age who are pregnant may apply for general relief cash benefits, which Massachusetts pays in full without any reimbursement from the federal government. This grant is more than Massachusetts' one-half share under the AFDC plan.

The Court wishes to make clear that by reaching its decision that Massachusetts' practice of denying AFDC benefits to mothers of unborn children is violative of the Supremacy Clause it does not intend to reward unwed mothers for their obvious illegal acts of fornication. Any moralistic or puritanical thoughts have long ago been assimilated in public assistance legislation and this Court simply has no right or power, if it wished to use it, in this area to make changes through judicial interpretation. The law is the law; and I am simply following it in this decision.

In conclusion, I grant the plaintiffs and their class a permanent injunction enjoining defendants from denying them AFDC benefits.

■ However, I do not find that defendants have acted in bad faith in de-

nying the AFDC benefits, but rather took the position that they should be denied under the belief that HEW had characterized them as optional. Doe v. Lukhard, 363 F.Supp. 823 (E.D. Va., 1973). Therefore, rather than create a financial strain on the state treasury by virtue of a federal order at this time, I deny retroactive benefits to the plaintiffs and their class, but order instead that payments commence at this time into the future. This position is supported by the basic policy underlying Social Security legislation as being basically remedial rather than compensatory.

Likewise, the Court denies costs to the plaintiffs.