Arlene L. CARVER and Gloria Fowler, individually and on behalf of their unborn children, and on behalf of all others similarly situated, Appellees,

v.

Thomas L. HOOKER, individually and as Director of the New Hampshire Division of Welfare, Appellant.

No. 74–1079.

United States Court of Appeals, First Circuit.

Heard June 4, 1974.

Decided July 18, 1974.

John T. Pappas, Concord, N. H., with whom Warren B. Rudman, Atty. Gen., Concord, N. H., was on brief, for appellant.

John W. Cotton, Concord, N. H., with whom George Charles Bruno, Manchester, N. H., was on brief, for appellees.

Before COFFIN, Chief Judge, McENTEE, Circuit Judge, and TAURO,* District Judge.

COFFIN, Chief Judge.

Appellant appeals the decision of the district court, 369 F.Supp. 204 (D.N.H. 1973), that the state practice of denying benefits, under the Aid to Families with Dependent Children (AFDC) program of the Social Security Act, 42 U.S.C. § 601 et seq., to pregnant women during the term of their pregnancy on behalf of their unborn children, conflicts with the provisions of the Social Security Act and is thus invalid under the Supremacy Clause.

For appellees to prevail in this action we first must find that unborn children are eligible for assistance under the AFDC program. *See* Townsend v. Swank, 404 U.S. 282, 286, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971); Wilson v. Weaver, 499 F.2d 155 (7th Cir. 1974); Alcala v. Burns, 494 F.2d 743 (8th Cir., 1974). If such eligibility is established, we must find secondly, either: (a) that there is insufficient evidence to demonstrate a congressional intention to permit the extension of AFDC benefits to the unborn only at the option of the states, *see* Townsend v. Swank, *supra* at 286, 92 S.Ct. 502; or (b) that having voluntarily extended AFDC benefits to the unborn, New Hampshire is required to do so in the manner prescribed by the Social Security Act. On the basis of either theory, the order of the district court must be affirmed.

* Sitting by designation.

 We consider first the question of eligiblity. Section 402(a)(10) of the Social Security Act, 42 U.S.C. § 602(a)(10), directs that AFDC benefits be "furnished with reasonable promptness to all eligible individuals." Eligibility is generally defined under § 406(a), 42 U.S.C. § 606(a), which describes "dependent child" in part as a needy child who has been deprived of parental support and who is living with one of several relatives.[1] We see no reason why a fetus may not be deprived of material and medical assistance as easily as a newborn infant, or any child for that matter, to the extent that deprivation of aid to the mother may deny the fetus adequate nutrition or medication. Nor does it appear anomalous that a fetus may be described as "living" with the mother. Indeed, a child is "living with" his mother more directly *in utero* than at any other time.[2] Thus we find nothing in the languge of § 406 which precludes a determination that Congress intended to include the unborn within the meaning of "dependent child".

While the language of the Act is thus not inconsistent with a congressional intention to benefit the unborn, it is not sufficiently unambiguous to dispose of the eligibility question,[3] and we turn to other indices of congressional intent. We agree with the district court that the legislative history of the Social Security Act "bespeaks no specific intent on the part of Congress in respect of either the exclusion or the inclusion of the unborn child." 369 F.Supp. at 212. It is true that isolated statements in the 1935 debate on the Act advert to the need to protect children "from the time of birth", [4] but there is no evidence that Congress as a body passed the Act with that limitation. It is also true that when Congress passed the AFDC proposal as Title IV of the Act, it enacted a separate program for maternal care in Title V, *see* 42 U.S.C. § 701 et seq. But Titles IV and V are qualitatively different weapons against poverty and deprivation, the latter providing medical services while the former disburses cash for improvement of the home environment. Moreover, because the medical services provided under Title V extend to born as well as unborn children, it seems incongruous that Congress would not make similar provision under Title IV. Thus, the congressional concern evidenced by Title V with respect to pre-natal care does not militate against an intention to assist the unborn through AFDC payments as well. *See* Whitfield v. Minter, 368 F.Supp. 798 (D.Mass.1973).

A final bit of evidence from the legislative history of the Social Security Act is Congress' recent [5] failure to enact

1. Section 406(a) provides:
"The term 'dependent child' means a needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece, in a place of residence maintained by one or more of such relatives as his or their own home, and (2) who is (A) under the age of eighteen, or (B) under the age of twenty-one and (as determined by the state in accordance with standards prescribed by the Secretary) a student regularly attending a school, college, or university, or regularly attending a course of vocational or technical training designed to fit him for gainful employment; . . . . " 42 U.S.C. § 606(a).

2. Though the Supreme Court's decision in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), arguably proscribes as unconstitutional the governmental characterization of a fetus, at least during the earlier portions of pregnancy, as a "human being" for the purposes of assessing the interests implicated by a decision to abort, that decision neither proscribes the recognition of a fetus as "living" nor forbids the government to benefit the fetus.

3. Indeed, the district court concluded that the statutory language is "no help" at all. 369 F.Supp. at 212.

4. 79 Cong.Rec. 7839 (1935) (statement of Mr. Ellenbogen).

5. We agree with the district court, 369 F. Supp. at 213, that because "the enacting Congress of 1935 clearly expected the Act to be molded and developed by future legislatures, . . . it is appropriate to look at later

amendments to the Act which would have expressly excluded eligibility for the unborn.[6] The fact that Congress thought it necessary to amend the Act to exclude the unborn suggests to us that the Act as written does make the unborn eligible for AFDC assistance, especially in light of the HEW interpretation to that effect, 45 C.F.R. § 233.90(c)(2)(ii). *See* Wilson v. Weaver, *supra*; Alcala v. Burns, *supra*; Whitfield v. Minter, *supra*. That suggestion, if weakened by the statement of the House committee considering the amendments that the change would "make clear" that the unborn child is ineligible,[7] is strengthened by the opinion of the Senate committee that the amendments "would *make* unborn children ineligible."[8] [Emphasis added.]

Absent dispositive indications from the legislaive history of the Social Security Act, we turn to the record of its administration by the Department of Health, Education and Welfare, mindful that "the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong." Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969); *see* Wilson v. Weaver, *supra*, 499 F.2d 155; Doe v. Lukhard, 363 F. Supp. 823, 829 (E.D.Va.1973), aff'd, 493 F.2d 54 (4th Cir. 1974). There can be no doubt that HEW's interpretation of the Act supports a finding of eligiblity. HEW regulations explicitly provide federal funds to states extending AFDC benefits to the unborn, 45 C.F.R. § 233.-90(c)(2)(ii), and the Department has consistently followed that practice since 1941.[9] *See* Wilson v. Weaver, *supra*. In other words, if unborn children are ineligible under the Act, HEW and its predecessors have illegally succored them for a third of a century.

Moreover, we think that a finding of eligibility for the unborn is consistent with the purposes and policies of the Social Security Act. The Supreme Court has declared the "paramount goal" of the AFDC program to be the protecton of needy children. King v. Smith, 392 U.S. 309, 325, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). Payments to the unborn are an appropriate, if not essential, means to that end, especially in light of the undisputed evidence, accepted by the district court, that pre-natal nutrition and medical care are important determinants of "later susceptibility to disease, neurological problems and long-term learning capacity." 369 F.Supp. at 208. See Wilson v. Weaver, *supra*, 499 F.2d 159, n. 3.[10] And while various provisions of the Act suggest congressional purposes subordinate to this overall policy of protecting children, we find that none of them conflict with a finding of eligibility of the unborn.[11]

---

Congressional pronouncements as indicative of an evolving legislative intention." *See* Committee on Ways and Means Report, H.R. Rep.No.615, 74th Cong., 1st Sess. 16–17 (1935).

6. *See* H.R.Rep.No.92–231, 92d Cong., 2d Sess. 184 (1972); S.Rep.No.92–1230, 92d Cong., 2d Sess. 108 (1972).

7. *See* Committee on Ways and Means Report, H.R.Rep.No.92–231, 92d Cong., 2d Sess. 184 (1972).

8. *See* Senate Finance Committee Report, S. Rep.No.92–1230, 92d Cong., 2d Sess. 108 (1972).

9. We recognize that the HEW regulations, while finding the unborn to be eligible for assistance, also make payments to the unborn optional at the discretion of the states.

But the question of optional exclusion is separate from the question of eligibility, and will be considered later.

10. Moreover, we agree with the court in *Wilson*, 160, n. 4, that a mother may be least able to care for her child during the period of pregnancy.

11. Both proponents and opponents of coverage of the unborn wrestle with provisions spelling out particular purposes. These range from encouraging "the care of dependent children in their own homes", 42 U.S.C. § 601, strengthening family life, § 601, and notice to law enforcement officials in a case of abandonment by a parent, § 602(a)(11), to a plan of social services for the child and his family, § 602(a)(13)–(15), and consideration of a child's "income and resources", § 602(a)(8). Some of these apply quite as

A final support for a finding of eligibility is that such a construction may be necessary to forestall a successful equal protection challenge to the AFDC legislation, brought on behalf of unborn children or their mothers.[12] The Supreme Court has concluded that "[a]ny doubt must be resolved in favor of [a] construction to avoid the necessity of passing upon the equal protection issue", Townsend v. Swank, *supra*, 404 U.S. at 291, 92 S.Ct. at 508. There is at least some doubt whether the justifications proferred here by New Hampshire, *see* 369 F.Supp. at 215, unrelated as they are to a recipient's need for assistance, would survive even the "loose review" of a "rationality test". *Cf.* Whitfield v. Minter, *supra*, 368 F.Supp. at 804.

In concert, the at least non-exclusionary language of the Act, the implicit congressional recognition of eligibility in consideration of amendments to exclude the unborn, the consistent administrative recognition of eligibility, the manifest purposes of the Act, and the significance of a constitutional challenge to a contrary interpretation, warrant our holding that unborn children are eligible for AFDC benefits under the Social Security Act, 42 U.S.C. § 606(a).

■ A finding that the unborn are eligible for assistance does not end our inquiry. Though Congress may have intended to make eligible a class of recipients, it may also have intended to permit the exclusion of that class at the option of the states. *See, e. g.,* 42 U.S.C. § 607(b). The Supreme Court has made clear, however, that upon a finding of eligibility the states bear a heavy burden to demonstrate a congressional intention to permit exclusion. Townsend v. Swank, *supra*, 404 U.S. at 286, 92 S.Ct. 502. But here there is nothing in the language, legislative history, or purposes of the Act to sustain such a burden. We recognize the consistent and long standing practice of HEW, *see* 45 C.F.R. § 233.90(c)(2)(ii), of permitting states the option to benefit the unborn, but this cannot substitute for "clear" evidence of *congressional* approval.[13] *See* Alcala v. Burns, *supra*; Doe v. Lukhard, 363 F.Supp. 823, 828–29 (E.D.Va.1973), aff'd, 493 F.2d 54 (4th Cir. 1974). We, therefore, conclude that Congress has not "clearly evidenced" an intention to permit the exclusion of the unborn.[14]

■ Alternatively, we find that even if such an optional policy exists, New Hampshire has exercised its option, though not in the manner prescribed by the Social Security Act. Appellants admit to a practice of making retroactive AFDC payments, covering the pre-natal period, under certain circumstances, after a child qualifying for AFDC benefits is born.[15] New Hampshire permits a

well to the unborn as to the born child. Some are family-oriented, with little or no bearing on eligibility. A few provisions fit more comfortably with the assumptions of the opponents, but not to the exclusion of the rationale urged by proponents. If there is a net result favoring those opposing inclusion of the unborn, it is at best a small one, deriving from a few minor provisions.

12. Appellees raised an equal protection challenge to New Hampshire's practice of excluding the unborn, but it was not reached in light of the district court's decision that the practice violates the Supremacy Clause. *See* 369 F.Supp. at 206, 215.

13. The Supreme Court has expressly disapproved the HEW "policy which permitted States to vary eligibility requirements from the federal standards without express or clearly implied congressional authorization." Carleson v. Remillard, 406 U.S. 598, 600–601, 92 S.Ct. 1932, 1934, 32 L.Ed.2d 352

(1972), citing Townsend v. Swank, *supra*, 404 U.S. at 286, 92 S.Ct. 502.

14. There is no contradiction between this conclusion and our earlier reliance upon HEW interpretations in determining eligibility; the inference from HEW practice is the same in both areas, but the standard of review is different here, where congressional intentions must be "clearly evidenced". *See* Alcala v. Burns, *supra*; Doe v. Lukhard, *supra*, 363 F.Supp. at 828–829.

15. We speak here of New Hampshire's practice of providing retroactive AFDC benefits after birth, and not of the state's responsibilities under Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq. The provisions of Title XIX aid the states in extending medical assistance, including pre-natal care, to individuals who *otherwise* qualify for categorical assistance, including AFDC. Thus New Hampshire extends medical assistance to pregnant mothers who qualify

mother to bill the state for the costs of delivery of a child, and because of administrative difficulties in determining which portion of the total doctor bill reflects pre-natal and which post-natal costs, regularly pays the *entire* bill. Regardless of its reasons, New Hampshire, albeit retroactively, has recognized the eligibility of unborn children by making AFDC payments to such children. However, the Act specifically requires that AFDC payments "shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 602(a)(10). And the Supreme Court has indicated that the statute precludes the states "from denying benefits, even temporarily, to a person who has been found fully qualified for aid." Jefferson v. Hackney, 406 U.S. 535, 545, 92 S. Ct. 1724, 32 L.Ed.2d 285 (1972). New Hampshire has made its decision to comply with the provisions of the Social Security Act permitting payments to unborn children. Now it must do so fully.

The judgment of the District Court is affirmed.

for AFDC benefits because they have other children, but does not extend such benefits to pregnant mothers with no other children. Because these Medicaid provisions utilize whatever is the prevailing definition of AFDC eligibility and extend pre-natal assistance by that standard rather than by virtue of a recipient's expectancy, New Hampshire's compliance with such provisions cannot be said to concede the eligibility of the unborn under the AFDC program.