PLANNED PARENTHOOD AFFILIATES
OF MICHIGAN et al., Plaintiffs,

v.

John ENGLER et al., Defendants.

SUMMIT MEDICAL CENTER
et al., Plaintiffs,

v.

Vernon K. SMITH et al., Defendants.

Nos. 4:94–CV–49, 4:94–CV–49.

United States District Court,
W.D. Michigan,
Southern Division.

July 18, 1994.

---

Lore A. Rogers, Rogers & Twanmoh, PC, Ann Arbor, MI, for plaintiffs.

Thomas R. Wheeker, Asst. Atty. Gen., Frank J. Kelley, Atty. Gen., Tort Defense Div., Lansing, MI, Mark N. Troobnick, Colby M. May, Jay Alan Sekulow, Washington, DC, for defendants.

Keith P. Felty, Small, Toth, Baldridge & VanBelicum, Bingham Farms, MI, Mark N. Troobnick, Colby M. May, Jay Alan Sekulow, Washington, DC, for amicus American Center for Law and Justice.

### OPINION

BENJAMIN F. GIBSON, Chief Judge.

Plaintiffs in these consolidated cases are providers of reproductive health services, including abortions, and one patient. Plaintiffs claim that Section 109a of the Social Welfare Act of Michigan, Mich.Comp. Laws Ann. § 400.109a (West 1994 supp.) ("Section 109a") conflicts with federal law and that this Court must enjoin its enforcement. Presently pending are plaintiffs' motions for summary judgment and for final relief on the merits.[1] For the reasons set forth below, the Court will enter judgment in plaintiffs' favor.

### I.

In 1988, Michigan enacted Section 109a, which provides as follows:

Notwithstanding any other provision of this act, an abortion shall not be a service provided with public funds to a recipient of welfare benefits, whether through a program of medical assistance, general assistance, or categorical assistance or through any other type of public aid or assistance program, unless the abortion is necessary to save the life of the mother. It is the policy of this state to prohibit the appropriation of public funds for the purpose of providing an abortion to a person who receives welfare benefits unless the abortion is necessary to save the life of the mother.

Mich.Comp. Laws Ann. § 400.109a (West 1994 supp.).

Congress created the federal Medicaid program in 1965 to "provid[e] federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons." *Harris v. McRae*, 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980). Although a state's participation in the Medicaid program is optional, participating states must comply with the requirements of the Medicaid Act.[2] *Id.*

Since September 1976, through a provision known as the "Hyde Amendment," Congress annually has prohibited the use of federal Medicaid funds for abortions, except under specific circumstances. *Id.* at 302, 100 S.Ct. at 2680. The Hyde Amendment for 1994 is part of the Departments of Labor, Health and Human Services, and Education, and Related Agencies Appropriations Act, 1994, and states as follows:

None of the funds appropriated under this Act shall be expended for any abortion except when it is made known to the Federal entity or official to which funds are appropriated under this Act that such procedure is necessary to save the life of the mother or that the pregnancy is the result of an act of rape or incest.

Pub.L. No. 103–112 § 509 (1993) ("the 1994 Hyde Amendment").

Plaintiffs contend that Section 109a conflicts with the 1994 Hyde Amendment and that therefore the court should enjoin enforcement of the Michigan statute. Under the Supremacy Clause, state statutes that conflict with federal program requirements are invalid. *Townsend v. Swank*, 404 U.S. 282, 285–86, 92 S.Ct. 502, 505, 30 L.Ed.2d 448 (1971); *Planned Parenthood Ass'n of Utah v. Dandoy*, 810 F.2d 984, 988 (10th Cir.1987).[3]

---

**1.** On May 24, 1994, the Court consolidated plaintiffs' motions for a temporary restraining order and a preliminary injunction with a final resolution on the merits.

**2.** Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.*

**3.** The Supremacy Clause provides:

Four Circuit Courts of Appeals have examined whether states that participate in Medicaid must fund medically necessary abortions for which federal reimbursement is available under the Hyde Amendments. *Roe v. Casey*, 623 F.2d 829 (3rd Cir.1980); *Hodgson v. Bd. of County Comm'rs*, 614 F.2d 601 (8th Cir.1980); *Zbaraz v. Quern*, 596 F.2d 196 (7th Cir.1979), *cert. denied*, 448 U.S. 907, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980); *Preterm, Inc. v. Dukakis*, 591 F.2d 121 (1st Cir.1979), *cert. denied*, 441 U.S. 952, 99 S.Ct. 2181, 60 L.Ed.2d 1057 (1979). The courts found that the literal language of the Hyde Amendments, which withheld federal funds, appeared to conflict with Medicaid's funding structure. The courts found that if the Hyde Amendments only withheld federal funds and did not alter Medicaid's federal-state cost-sharing scheme, the amendments implied that states alone must bear the cost of abortions under Medicaid. The courts therefore looked to legislative history to determine Congress' intent in enacting the amendments.[4] The courts found that the Hyde Amendments substantively modified Title XIX.[5] The courts also uniformly held that states must fund abortions for which federal funds are available under the Hyde Amendments.[6]

In a later case, the Supreme Court held that "Title XIX itself provides for variations in the required coverage of state Medicaid plans depending on changes in the availability of federal reimbursement." *Harris*, 448 U.S. at 310 n. 14, 100 S.Ct. at 2684 n. 14.[7] Accordingly, the literal language of the Hyde Amendment does not conflict with the funding structure of Title XIX.

Defendants argue that the 1994 Hyde Amendment is merely an appropriations act which makes federal matching funds available but which does not impose a duty on the state to fund abortions. Defendants further argue that the 1994 Hyde Amendment is clear on its face and that the Court should not examine its legislative history.[8] Defendants correctly note that the amendment addresses only federal funds. However, the amendment does not indicate its intended effect on a participating state's substantive obligations under Medicaid. In *Zbaraz*, the Seventh Circuit looked to the legislative history both because of the apparent conflict with Title XIX and because neither Title XIX

---

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding. U.S. Const. art. VI, cl. 2.

**4.** *Casey*, 623 F.2d at 835; *Hodgson*, 614 F.2d at 612; *Zbaraz*, 596 F.2d at 199–200; *Preterm*, 591 F.2d at 128.

**5.** *Casey*, 623 F.2d at 836 (Congress intended the amendment to substantively modify Title XIX); *Hodgson*, 614 F.2d at 614 (Hyde Amendment is a substantive amendment of Title XIX); *Zbaraz*, 596 F.2d at 199 (Congress intended through Hyde Amendment to alter scope of XIX in regard to abortions); *Preterm*, 591 F.2d at 134 (Hyde Amendment substantively alters Title XIX).

**6.** *Casey*, 623 F.2d at 836–37 (Pennsylvania must fund abortions for which funding is provided under the Hyde Amendment); *Hodgson*, 614 F.2d at 605 (Minnesota must finance the abortions contemplated by Hyde Amendment); *Zbaraz*, 596 F.2d at 199 n. 7 (Illinois must fund abortions for which funding is provided under

Hyde Amendment); *Preterm*, 591 F.2d at 134 (States must fund abortion services in those instances specified in Hyde Amendment).

**7.** Therefore, the Court did not address whether the Hyde Amendment substantively altered Title XIX. *Id.* The Court held that regardless whether Title XIX requires states to include medically necessary abortions in their Medicaid plans, withdrawal of federal funds relieves states of any obligation to provide abortions not federally funded. *Id.* at 310–11, 100 S.Ct. at 2684–85. The Court did not decide whether states are required to funds all medically necessary abortions for which federal funding is available.

**8.** Defendants also argue that *Beal v. Doe*, 432 U.S. 438, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977) undermines the holdings of the four circuit cases. However, as the Supreme Court noted in *Harris*, *Beal* did not address the effect of the Hyde Amendments on Title XIX. *Harris*, 448 U.S. at 307 n. 11, 100 S.Ct. at 2683 n. 11. Finally, defendants rely upon *Roe v. Ferguson*, 515 F.2d 279 (6th Cir.1975). However, *Ferguson* was decided before the first Hyde Amendment and, therefore, the Sixth Circuit did not consider whether the Hyde Amendment modifies Title XIX.

nor the Hyde Amendment clearly stated the states' obligations:

> Because not all of the obligations of the states are clearly spelled out in [The Medicaid Act] and because those obligations arise in the context of a plan for sharing expenses between the federal and state governments, it becomes appropriate to consult the legislative history of the Hyde Amendment to see what impact its provisions were intended to have on the substantive obligations of the participating states.

*Zbaraz*, 596 F.2d at 200 (footnote omitted). The Court finds the Seventh Circuit's reasoning persuasive. Accordingly, the Court will examine the amendment's legislative history to determine Congress' intent in enacting the 1994 Hyde Amendment.

The same congressional concerns and intentions are apparent in the congressional floor debates regarding the 1994 Hyde Amendment as in the debates analyzed in the four circuit court cases. First, although the 1994 Hyde Amendment was part of a larger appropriations bill, the debates did not focus on finances in an extensive or detailed way. Instead, the focus was on ethical, moral, philosophical, sociological, and political concerns.[9] Second, numerous members of Congress criticized the inclusion of the abortion debate in appropriations legislation.[10] Other legislators stated that in the absence of the Hyde Amendment states must fund abortions and that the Hyde Amendment removed any requirement that the states subsidize abortions not funded under the amendment, although the states could choose to fund those abortions.[11] Finally, the Court finds no indication that the legislators intended the Hyde Amendment to alter the federal-state sharing of expenses under Medicaid.[12] Defendants do not rely upon any portions of the legislative history to support their argument that the 1994 Hyde Amendment was merely an appropriations bill. The Court finds that, as with the Hyde Amendments the Third, Eighth, Seventh, and First Circuits analyzed, Congress intended through the 1994 Hyde Amendment to modify Title XIX.

This conclusion is consistent with both the history of the Hyde Amendments and with agency interpretation. First, on October 1, 1980, the 96th Congress passed a Hyde Amendment which provided in pertinent part:

> [N]one of the funds made available by this joint resolution ... shall be used to perform abortions except where the life of the mother would be endangered if the fetus were carried to term; or except for such medical procedures necessary for the victims of rape or incest, when such rape has within seventy-two hours been reported to a law enforcement agency or public health service ... *Provided, however,* That the several States are and shall remain free not to fund abortions to the extent that they in their sole discretion deem appropriate.

Pub.L. No. 96–369, § 101(c), 94 Stat. 1351, 1352–53 (1980) (emphasis in original). Therefore, if Congress intended to grant the states the right to refuse to fund abortions for which federal Medicaid funds were avail-

---

9.  *Casey*, 623 F.2d at 835–36; *see, e.g.*, 139 Cong. Rec. H 4282, H 4291–94, H 4322–27 (daily ed. June 30, 1993); 139 Cong.Rec. S 12574–94 (daily ed. Sept. 28, 1993).

10.  *Casey*, 623 F.2d at 836; *Hodgson*, 614 F.2d at 613; *Zbaraz*, 596 F.2d at 200–01; *Preterm*, 591 F.2d at 129–30; *see, e.g.*, 139 Cong.Rec. H 4324 (daily ed. June 30, 1993) (statement of Rep. Morella); *Id.* at H 4325 (statement of Rep. Maloney); *Id.* at H 4326 (statement of Rep. Schroeder); 139 Cong.Rec. S 12575 (daily ed. Sept. 28, 1993) (statement of Sen. Murray); *Id.* at S 12585 (statement of Sen. Boxer); *Id.* at S 12586–87 (statement of Sen. Hatfield).

11.  *Hodgson*, 614 F.2d at 613; *Zbaraz*, 596 F.2d at 200; *Preterm*, 591 F.2d at 130; *see, e.g.*, 139 Cong.Rec. H 4325 (daily ed. June 30, 1993) (statement of Rep. Dornan); 139 Cong.Rec. S 12581 (daily ed. Sept. 28, 1993) (statement of Sen. Hatch); *Id.* at S 12588 (statement of Sen. Nickles).

12.  *Zbaraz*, 596 F.2d at 200–201; *see also Hodgson*, 614 F.2d at 613; *Preterm*, 591 F.2d at 129. Although one Senator appeared to state that state funding was not involved in the 1994 Hyde Amendment, the Senator also stated that "[M]edicaid is a Federal–State program paying for the abortion; paying the entire cost." 139 Cong. Rec. S 12588 (daily ed. Sept. 28, 1993) (statement of Sen. Nickles).

able, Congress could have done so expressly in the 1994 Hyde Amendment.

Finally, if a statute is ambiguous, courts generally defer to the reasonable interpretation of the agency responsible for its implementation, if that interpretation does not conflict with the statute's plain language. *Good Samaritan Hosp. v. Shalala,* —— U.S. ——, ——, 113 S.Ct. 2151, 2159, 124 L.Ed.2d 368 (1993); *Nat'l R.R. Passenger Corp. v. Boston & Maine Corp.,* —— U.S. ——, —— ——, 112 S.Ct. 1394, 1401–02, 118 L.Ed.2d 52 (1992). Plaintiffs have provided three communications from the Health Care Financing Administration regarding the 1994 Hyde Amendment. The agency's position is that under the 1994 Hyde Amendment, states must fund abortions for which federal funds are available under the 1994 Hyde Amendment. Thus, under Medicaid states must fund abortions to save the mother's life and to terminate pregnancies resulting from rape or incest.[13] The Court finds that the agency's interpretation is reasonable. Therefore, based upon the 1994 Hyde Amendment legislative history, the history of the Hyde Amendments, and the agency's interpretation, the Court finds that the 1994 Hyde Amendment modifies Title XIX. The Court further finds that states must fund those abortions for which federal funds are available under the 1994 Hyde Amendment. Because Section 109a is not consistent with the modified Title XIX, it cannot stand. Accordingly, the Court will enjoin defendants from enforcing Section 109a insofar as it prohibits state funding for abortions to terminate pregnancies resulting from acts of rape or incest, as required by Title XIX, modified by the Hyde Amendment, while at the same time accepting federal funds pursuant to Title XIX.

## II.

For the reasons set forth above, the Court finds that Section 109a conflicts with Title XIX, as modified by the 1994 Hyde Amend-

ment, and that, pursuant to the Supremacy Clause, the Michigan statute cannot stand. Accordingly, the Court will enjoin defendants from enforcing Section 109a insofar as it prohibits state funding for abortions to terminate pregnancies resulting from acts of rape or incest, as required by Title XIX, modified by the Hyde Amendment, while at the same time accepting federal funds pursuant to Title XIX.

---

13. December 28, 1993, letter to State Medicaid Directors from Sally K. Richardson, Director, Medicaid Bureau, Health Care Financing Administration, Department of Health and Human Services; January 5, 1994, letter to Ray Hanley, Chairman, State Medicaid Directors' Association, from Bruce C. Vladeck, Administrator, Health Care Financing Administration, Department of Health and Human Services; and March 25, 1994, letter to State Medicaid Directors from Richardson.