G. William ORR, M.D., on behalf of himself and the Medicaid-eligible women seeking abortions he serves; and Womens Services, P.C., Plaintiffs,

v.

E. Benjamin NELSON, in his official capacity as Governor of the State of Nebraska; Donald Stenberg, in his official capacity as Attorney General of the State of Nebraska; and Mary Dean Harvey, in her official capacity as Director of the Nebraska Department of Social Services, Defendants.

No. 4:CV94–3252.

United States District Court, D. Nebraska.

Nov. 4, 1994.

Lawrence I. Batt, Batt & Associates, Omaha, NE, and Simon Heller, Janet Benshoof, The Center for Reproductive Law & Policy, New York City, for Plaintiffs.

David T. Bydalek, Assistant Attorney General, Lincoln, NE, for Defendants.

## MEMORANDUM AND ORDER

KOPF, District Judge.

Because the State of Nebraska refuses to use its Medicaid funds to pay for abortions in

---

cases of rape and incest, the plaintiffs have sued the defendants, seeking injunctive relief. The plaintiffs have filed a motion for summary judgment (Filing 7). There are no material facts in dispute, and the defendants concede standing and concede that the case may be decided on the merits. (Br.Opp'n Pls.' Mot.Summ.J. at 5.) I shall grant the motion for summary judgment and enjoin the defendants.

## I.

The following facts are undisputed:

1. Plaintiff G. William Orr is a physician licensed to practice medicine in the State of Nebraska and board certified in Obstetrics and Gynecology. (Orr Dec. ¶ 1; admitted, Answer ¶ 4.)

2. Dr. Orr is the president of Womens Services, P.C., also a plaintiff in this action. (Orr Dec. ¶ 2.)

3. Womens Services, P.C., is enrolled as a Medicaid provider in Nebraska. (Orr Dec. ¶ 3.)

4. Dr. Orr performs first- and second-trimester abortions at Womens Services up to the 16th week of pregnancy. (Orr Dec. ¶ 2.)

5. Among the patients Dr. Orr sees are women seeking abortions who are eligible for medical assistance in Nebraska and are pregnant as a result of rape or incest. (Orr Dec. ¶ 2.)

6. On July 27, 1994, Dr. Orr submitted a claim to Nebraska Medicaid for an abortion performed by him for a woman who was pregnant as a result of rape. His office was informed by a representative of the Department of Social Services (the Department) that Medicaid would not reimburse the claim. (Orr Dec. ¶ 4.)

7. Defendant E. Benjamin Nelson is the governor of the State of Nebraska and is responsible for reviewing and approving all rules and regulations promulgated by agencies of the state government of Nebraska, including the Department of Social Services. Neb.Rev.Stat. § 84–905.01 (1987). (Admitted, Answer ¶ 6.)

8. Defendant Donald Stenberg is the attorney general of the State of Nebraska and is responsible for reviewing and approving all rules and regulations promulgated by agencies of the state government of Nebraska, including the Department of Social Services. Neb.Rev.Stat. § 84–905.01 (1987). (Admitted, Answer ¶ 7.)

9. Defendant Mary Dean Harvey is director of the Nebraska Department of Social Services, which is charged with the administration of all forms of public assistance in the state, including the Nebraska medical assistance program. Neb.Rev.Stat. § 68–703 (1990). (Admitted, Answer ¶ 8.)

10. The "Hyde Amendment" is the name given to language that, since fiscal year 1977, has been inserted annually into federal appropriations bills, and which limits the circumstances in which federal funds may be used for Medicaid abortions. (Admitted, Answer ¶ 36 (admitting ¶ 37 [*sic*] of Compl.).)

11. The specific circumstances under which the Hyde Amendment permits federal funds to cover abortion services have varied over the years. Federal funding for abortions necessary to save the mother's life has always been permitted; funding for abortions necessary to prevent severe, long-term physical damage and for women pregnant as a result of rape or incest has been permitted in some years. (Compl. ¶ 40.)

12. Between fiscal year 1981 and fiscal year 1993, the Hyde Amendment limited federal funding of abortion to those instances when the life of the mother would be threatened by carrying the fetus to term. *See, e.g.,* Dep't of Labor, Health & Human Servs., Educ. & Related Agencies Appropriations Act of 1992, Pub.L. No. 102–394, § 203, 106 Stat. 1792, 1811 (1992). (Compl. ¶ 41.)

13. In the fiscal years between 1981 and 1983, Congress gave participating states the option not to cover medically necessary abortions for which they could receive federal reimbursement—i.e., those abortions covered in the Hyde Amendment—through an amendment to the Hyde Amendment known as the Bauman Amendment. For example, the Bauman Amendment to the Hyde Amendment for fiscal year 1981 added the

following proviso: "Provided, however, that the several States are and shall remain free not to fund abortions to the extent that they in their sole discretion deem appropriate." Supplemental & Continuing Appropriations & Recision Act of 1981, Pub.L. No. 97–12, § 109, 95 Stat. 95 (1981). Such language has been absent from the Hyde Amendment since 1984. (Compl. ¶ 42.)

14. On October 21, 1993, President Clinton signed into law the Department of Labor, Health and Human Services, Education and Related Agencies Appropriations Act, 1994, Pub.L. No. 103–112 (1993), which permits federal funds to be used for abortions where the mother was the survivor of rape or incest. Section 509 of the 1994 appropriations bill (the "1994 Hyde Amendment") provides that:

> [n]one of the funds appropriated under this Act shall be expended for any abortion except when it is made known to the Federal entity or office to which funds are appropriated under this Act that such procedure is necessary to save the life of the mother or that the pregnancy is the result of an act of rape or incest.

(Admitted, Answer ¶ 43.)

15. The Health Care Financing Administration (HCFA) of the Department of Health and Human Services (HHS) informed state Medicaid directors of this requirement in a letter dated December 28, 1993 (the HHS directive) (Ex. F attached to Compl.). The HHS directive advises state Medicaid directors that, effective October 1, 1993, Medicaid plans must cover abortions to terminate pregnancies resulting from rape or incest in conformity with this year's Hyde Amendment. The HHS directive states:

> As with all other mandatory medical services for which Federal funding is available, States are required to cover abortions that are medically necessary. By definition, abortions that are necessary to save the life of the mother are medically necessary. In addition, Congress this year added abortions for pregnancies resulting from rape and incest to the category of medically necessary abortions for which funding is provided. Based on the language of this year's Hyde Amendment and

on the history of Congressional debate about the circumstances of victims of rape and incest, we believe that this change in the text of the Hyde Amendment signifies Congressional intent that abortions of pregnancies resulting from rape or incest are medically necessary in light of both medical and psychological health factors. Therefore, abortions resulting from rape or incest should be considered to fall within the scope of services that are medically necessary.

(Compl. ¶ 44.)

16. In a letter dated January 5, 1994, HCFA Administrator Bruce Vladeck further advised the chair of the State Medicaid Directors Association that:

> When Congress enacted the Hyde Amendment last year, it added abortions in the case of pregnancies resulting from the tragedy of rape or incest to the category of abortions which Medicaid must cover. Thus, if state law conflicts with this enactment, court decisions require that state law give way to the federal law insofar as it applies to the Medicaid proc. am.

(Ex. G attached to Compl.) (Admitted, Answer ¶ 45.)

17. On March 25, 1994, the director of the HHS Medicaid Bureau sent a supplemental letter to state Medicaid directors to inform them that:

> individuals participating in your Medicaid programs may claim entitlement to the Federal benefits that are currently provided under that program, including payment for an abortion that results from an act of rape or incest, Federal courts that have considered the issue in the past have held that State law impediments cannot stand in the way of an individual's entitlement under a State Medicaid program to medically necessary services, including abortions, for which Federal funds are available.

(Ex. H attached to Compl.) (Admitted, Answer ¶ 46.)

18. On August 31, 1994, defendant Stenberg issued a legal opinion to Governor Nelson and Mary Dean Harvey, director of the Department of Social Services, recommend-

ing that "the Department of Social Services and the Governor of Nebraska not amend state rules to expand the use of taxpayer funds to pay for abortions." (Batt Dec.Ex. A at 22.)

19. On September 2, 1994, Governor Nelson issued a news release stating that "[t]he state will fight a federal mandate that requires government funding of abortions in cases of rape and incest." (Batt Dec. Ex. B.)

## II.

Virtually all courts that have considered the issue have concluded that the 1994 Hyde Amendment preempts conflicting state law so that a state may not prohibit funding for abortions in cases of rape or incest while the state continues to accept federal Medicaid funds. The appellate courts have not disturbed those rulings. *Hope Medical Group for Women v. Edwards*, 860 F.Supp. 1149 (E.D.La.1994) (permanently enjoining, as inconsistent with Hyde Amendment, Louisiana's statutory funding restriction insofar as it prohibits state funding for abortions in cases of rape or incest while the state continues to accept federal Medicaid funds), *stay pending appeal denied*, No. 94–30445 (5th Cir. Aug. 16, 1994), *stay pending appeal denied*, —— U.S. ——, 115 S.Ct. 1, 129 L.Ed.2d 903 (Scalia, Circuit Justice Aug. 17, 1994); *Little Rock Family Planning Servs. v. Dalton*, 860 F.Supp. 609 (E.D.Ark.1994) (permanently enjoining, as inconsistent with Hyde Amendment, Arkansas state constitutional amendment restricting abortion funding); *Planned Parenthood v. Engler*, 860 F.Supp. 406 (W.D.Mich.1994) (permanently enjoining, as inconsistent with Hyde Amendment, Michigan statute restricting abortion funding); *Jeanette R. v. Ellery*, No. BDV–94–811, not reported, but in app. in *Dalton* (Mont.Dist.Ct. June 1, 1994) (preliminarily enjoining, as inconsistent with Hyde Amendment, Montana administrative regulation restricting abortion funding); *Hern v. Beye*, No. 93–N–2350, 1994 WL 192366 (D.Colo. May 12, 1994) (permanently enjoining, as

inconsistent with Hyde Amendment, Colorado state constitutional amendment restricting abortion funding); *stay pending appeal denied*, No. 94–1205 (10th Cir. May 31, 1994). *See also Roe v. Casey*, 623 F.2d 829 (3rd Cir.1980); *Hodgson v. Bd. of County Comm'rs*, 614 F.2d 601 (8th Cir.1980); *Zbaraz v. Quern*, 596 F.2d 196 (7th Cir.1979), *cert. denied*, 448 U.S. 907, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980); *Preterm, Inc. v. Dukakis*, 591 F.2d 121 (1st Cir.1979), *cert. denied*, 441 U.S. 952, 99 S.Ct. 2181, 60 L.Ed.2d 1057 (1979) (all four of these circuit cases found that the Hyde Amendment, as then constituted, was intended by Congress to modify Title XIX).

For essentially the reasons expressed in the above-cited cases, my conclusion is the same.[1] There is no good reason to restate what those other courts have laboriously and carefully explained. The point is simple: having taken federal funds, Nebraska must follow federal law.

Accordingly,

IT IS ORDERED that:

(1) The plaintiffs' motion for summary judgment (Filing 7) is granted;

(2) Neb. DPW Program Manual § 18–004.08 (1982) shall be declared invalid under the Supremacy Clause of the United States Constitution;

(3) The defendants shall be permanently enjoined from enforcing Neb. DPW Program Manual § 18–004.08 (1982);

(4) A separate judgment shall issue.

---

**1.** In so holding, I do not agree with the defendants that this case is properly examined under the "Spending Clause." However, even if this case were properly examined on "Spending Clause" grounds, federal law is sufficiently clear as to what is required of the states that it easily survives such a challenge.