SHIVERS, Senior Judge.
Bertha Cross, Vickie Davis and Mari Del-signore appeal final orders issued by a Department of Health and Rehabilitative Services (HRS) Hearings Officer affirming the Department’s award of Aid to Families with Dependent Children (AFDC) benefits under Chart II of Rule 10C-1.103, Florida Administrative Code, because each of them was unable to document any liability to pay for shelter. We affirm.
HRS is the agency charged with conducting, supervising, and administering Florida’s AFDC program. Section 409.026(1), Fla.Stat. (1993). In exercising this responsibility, HRS must determine the amount of benefits each applicant or recipient is entitled to receive and promulgate necessary rules. Section 409.026(1), (8), Fla.Stat. (1993). The amount of benefits a recipient will receive is determined in accordance with Rule 10C-1.103, which includes two charts showing the amount to be received depending on the number of members of the assistance group and the applicable consolidated need and eh- *1141 gibility standards.[1] Fla.Admin.Code R. 10C-1.103(3)(a) and (b). According to Department rule,
(a) Chart I standards are recognized for assistance groups who have a purchased shelter obligation, such as a mortgage payment, rent, room and board payment, purchase contract, etc. In order for Chart I to be budgeted, a shelter obligation must be documented by the recipient....
(b) Chart II standards are recognized for assistance groups who are responsible for shelter related costs such as water, sewage, garbage, taxes, insurance and upkeep, or who have no shelter or shelter related costs.
Fla.Admin.Code R. 10C-1.103(l)(a) and (b).
Appellants Cross and Davis had their AFDC benefits reduced from an amount calculated under Chart I of Rule 10C-1.103 to the amount each was entitled to under Chart II on December 1,1992, and March 23,1993, respectively, because neither was able to document a shelter obligation at her recertification interview. At the time her benefits were reduced, Cross was living in an apartment that had been deemed uninhabitable as a result of damage from Hurricane Andrew. Davis was living in disaster assistance housing provided by Metro-Dade County and the Archdiocese of Miami commonly called “Tent City” when her benefits were reduced. Del-signore became homeless in early 1993 as a result of domestic strife. She moved to “Tent City” sometime thereafter and she was granted AFDC benefits under Chart II on May 1, 1993.
Each of the appellants requested and received a hearing to determine whether her benefits had been properly calculated or reduced. The Hearings Officer, Judith E. Jacobs, issued similar final orders in each case utilizing an identical analysis to deny the AFDC recipient’s appeal and affirm the De *1142 partment’s action. The Order rendered in the Cross case is representative:
Ms. Cross’ AFDC benefits were reduced effective December, 1992, as she no longer had an obligation or (sic) shelter. The Department determined her AFDC benefits based upon the number of members of the assistance group and whether or not Ms. Cross had a shelter obligation. The benefits were based upon Chart II, which is assistance for assistance groups without a shelter obligation. Ms. Cross is not obligated to pay shelter expenses therefore, the hearings officer must affirm that Department is providing Ms. Cross with the correct amount of AFDC benefits for an assistance group with no shelter obligation.
On appeal, appellants argue that Rule 10C-1.103(3) violates section 409.185(4), Florida Statutes, because it includes two different standards of need and payment standards. They argue that this rule also frustrates the purpose of the federal AFDC act and regulations promulgated thereunder because it fails to encourage the care of dependent children in their own home. Lastly, appellants challenge the rule on the basis that it creates an irrebuttable presumption in violation of state and federal law, and generally conflicts with other statutes and statutorily declared policies of the Florida Legislature. We do not agree.
The AFDC program is a long-established example of cooperative federalism. King v. Smith, 392 U.S. 309, 313-16, 88 S.Ct. 2128, 2131-33, 20 L.Ed.2d 1118 (1968). Although participating states must comply with federal law in administering their program,
the [AFDC] program is basically voluntary and States have traditionally been at liberty to pay as little or as much as they choose, ...
There are two basic factors that enter into the determination of what AFDC benefits will be paid. First, it is necessary to establish a “standard of need,” a yardstick for measuring who is eligible for public assistance. Second, it must be decided how much assistance will be given, that is, what “level of benefits” will be paid. On both scores Congress has always left to the States a great deal of discretion. Thus, some States include in their “standard of need” items that others do not take into account- Some States impose so-called dollar máximums on the amount of public assistance payable to any one individual or family. Such máximums establish the upper limit irrespective of how far short the limitation may fall of the theoretical standard of need. Other States curtail the payments of benefits by a system of ‘ratable reductions’ whereby all recipients will receive a fixed percentage of the standard of need....
Rosado v. Wyman, 397 U.S. 397, 408-09, 90 S.Ct. 1207, 1216, 25 L.Ed.2d 442 (1970) (citations and footnotes omitted); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968) (“There is no question that States have considerable latitude in allocating their AFDC resources, since each State is free to set its own standard of need and to determine the level of benefits by the amount of funds it devotes to the program.”). Indeed, federal law provides that the AFDC program enables states to furnish financial assistance “as far as practicable under the conditions of each state.” 42 U.S.C. § 601. Regulations also allow a state to “provide more limited coverage” when authorized, 45 C.F.R. § 233.20(a)(3), and to make ratable reductions of the adjusted standard of need when it is not able to fully meet the need, 45 C.F.R. § 233.20(a)(2)(ii). At least one Florida court has also recognized “that a state may properly allocate its economic resources by exercising its ‘undisputed power to set the level of benefits’ in order to preserve the fiscal integrity of its welfare programs.” Tarver v. State, 371 So.2d 190, 193 (Fla. 4th DCA 1979).
Florida does not make full AFDC payments, as is reflected in Rule 10C-1.103(3), which indicates a payment standard that is less than the consolidated standard of need. In computing the payment standard, Florida uses both methods approved by the Supreme Court in Rosado. Rule 10C-1.103 sets maximum payment amounts and ratable reductions for AFDC benefits. The reductions are simply greater for those families not paying for shelter. Essentially, the chart reflects the rationale that AFDC recipients should not be reimbursed for something for *1143 which they are not obligated to pay. The classification of AFDC recipients into those with and without a shelter obligation reasonably provides more money to those responsible for paying for their housing. Chart II rests on the premise that families not making rent or mortgage payments have a lower monetary need for AFDC purposes. Nothing in federal or Florida law prohibits HRS from adopting two tiers of payment standards or, implicitly, two sets of ratable reductions, as long as the distinction between the two is reasonable.
The decision to provide AFDC recipients who do not have an obligation to pay for their shelter with decreased benefits was a policy decision made by HRS under the direction of the Legislature, and should not be disturbed by this Court. As the Supreme Court stated in approving Texas’ policy of computing benefits by applying a percentage reduction before deducting outside income,
Striking the proper balance between these competing policy considerations is, of course, not the function of this Court. “There is no question that States have considerable latitude in allocating their AFDC resources, since each State is free to set its own standard of need and to determine the level of benefits by the amount of funds it devotes to the program.” So long as the State’s actions are not in violation of any specific provision of the Constitution or the Social Security Act, appellants’ policy arguments must be addressed to a different forum.
Jefferson v. Hackney, 406 U.S. 535, 541, 92 S.Ct. 1724, 1729, 32 L.Ed.2d 285 (1972) (quoting King, 392 U.S. at 318-19, 88 S.Ct. at 2134).
We also refuse to invalidate Chart II of Rule 10C-1.103 because the standard of need it contains violates section 409.185(4), Florida Statutes, which provides: “The aid to families with dependent children standard of need shall be that which is recognized by the Federal Poverty Income Guidelines and produced by the United States Department of Health and Human Services.” Although ap-pellee concedes that the lower standard of need listed in Chart II violates section 409.185(4) on its face because it falls below the federal poverty guidelines, this error is harmless in light of the fact that the appellants received the proper amount of benefits. We also refuse to invalidate this rule because it was not presented to us in the proper procedural posture. Baillie v. Department of Nat. Resources, 632 So.2d 1114 (Fla. 1st DCA) (court may not determine whether a rule is an invalid exercise of delegated legislative authority unless the rule has first been challenged under section 120.54(4) or 120.56, Florida Statutes), review denied, 642 So.2d 1362 (Fla.1994); City of Palm Bay v. State, 588 So.2d 624, 628 (Fla. 1st DCA 1991) (duly promulgated agency rules are treated as presumptively valid until invalidated in a section 120.56 rule challenge).
Accordingly, the orders appealed from are AFFIRMED.
BARFIELD and KAHN, JJ., concur.

 (a) Chart I for Assistance Groups With Shelter.
NUMBER IN ASSISTANCE PAYMENT GROUP STANDARDS CONSOLIDATED NEED STANDARDS ELIGIBILITY STANDARDS
1 $180 $ 552 $1021
2 241 740 1369
3 303 928 1719
4 364 1117 2066
5 426 1305 2414
6 487 1493 2764
7 549 1682 3112
8 610 1870 3460
9 671 10 733 2058 2247 3807 4157
Over 10 Add $62 Add $188 Add $348
Adjustment for Each Additional Person
(b) Chart II for Assistance Groups Without Shelter.
NUMBER IN ASSISTANCE PAYMENT GROUP STANDARDS CONSOLIDATED NEED STANDARDS ELIGIBILITY STANDARDS
1 $ 95 $ 290 $ 537
2 158 483 894
3 198 606 1121
4 254 780 1443
5 289 887 1641
6 346 1061 1963
7 392 1203 2226
8 438 1341 2481
9 485 1487 2751
10 534 1635 3025
Over 10 Add $41 Add $148 Add $275
Adjustment for Each Additional Person